# FILED

10/17/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 16-0276

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 253

IN THE MATTER OF:

N.R.A. and V.A.A.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause Nos. DN 13-09 and DN 13-10
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Dana A. Henkel, Terrazas Clark Henkel, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Mark E. Westveer, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs:  September 20, 2017

Decided:  October 17, 2017

Filed:

                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     A.N. (Mother) appeals the termination of her parental rights to her children, N.R.A. and V.A.A., by the Ninth Judicial District Court, Glacier County. Mother raises three issues on appeal, but we address only the following issue, and affirm:

> *Did the District Court err by denying Mother's motion to set aside her relinquishment of parental rights?*

### FACTUAL AND PROCEDURAL BACKGROUND[1]

¶2     On April 24, 2013, the Department of Public Health and Human Services, Child and Family Services Division (DPHHS or Department), filed a Petition for Emergency Protective Services and Temporary Investigative Authority as to N.R.A., then two years old, and V.A.A., six months old. The children had been left with family members by their parents. The family members discovered that V.A.A. had severe diaper rash, urine burns, and a yeast infection. The parents were arrested on outstanding warrants, and Father admitted they had used methamphetamine in front of the children, though Mother denied this allegation. DPHHS took protective custody of the children and placed them with relatives in Cut Bank, who lived near the parents. In September 2013, the Cut Bank relatives were no longer able to care for the children, and they were moved to another kinship placement in Gardiner, a significant distance from the parents. Mother asserted that this placement made visitation very difficult, and the District Court ordered DPHHS to make "every effort" to increase visits between her and the children.

---

[1] The three-year factual and procedural history of this case is complex, and is here summarized, focusing on the facts relevant to the relinquishment issue.

¶3 In December 2013, the District Court determined the children were youths in need of care due to physical neglect and exposure to dangerous drugs, and granted temporary legal custody to DPHHS. Treatment plans were approved for both parents. The parties would later dispute whether a proper adjudicatory hearing had been conducted.

¶4 In November 2014, DPHHS filed a petition to terminate Father's and Mother's parental rights based on their failure to successfully complete their treatment plans. In May 2015, the District Court terminated Father's parental rights due to continued drug use, failure to complete treatment, and exposing the children to a sex offender, among other grounds. However, with regard to Mother, the District Court concluded that, while Mother had initially done poorly on her treatment plan, she had made positive improvements in her life, and "earned the right to try to parent her children." The District Court approved a second treatment plan.

¶5 In August 2015, the DPHHS case worker met with Mother and explained that she was not complying with the second treatment plan, and that the Department was contemplating filing a second time for termination of her parental rights. The case worker told Mother that she could avoid a second termination proceeding by voluntarily relinquishing her parental rights. Mother testified that she was advised by DPHHS representatives that it was more likely she would be able to see her children after her rights were terminated if she voluntarily relinquished them. Mother declined voluntary relinquishment, and canceled the relinquishment counseling that had been scheduled for her.

¶6      On December 1, 2015, DPHHS filed a petition to terminate Mother's parental rights, based on her failure to complete her second treatment plan. The same day, Mother notified DPHHS that she wanted to relinquish her parental rights. On December 4, 2015, a DPHHS permanency planning specialist met with Mother and conducted a three-hour counselling session regarding relinquishment, as required by § 42-2-409, MCA. At the end of the session, Mother signed an affidavit waiving all her parental rights and relinquishing her children for adoption, affirming therein that she was signing voluntarily and without undue influence. Although encouraged to speak with her attorney, Mother declined the opportunity to do so before signing.

¶7      On January 6, 2016, Mother's attorney asserted during a hearing that Mother was acting under duress when she had waived her rights to the children, and she wished to withdraw her relinquishment. On February 1, 2016, the District Court conducted a hearing to consider the validity of Mother's relinquishment. Mother, the DPHHS case worker, the placement specialist, and a CASA advocate testified. On March 10, 2016, the District Court entered an ordering denying Mother's motion to revoke her relinquishment of parental rights, finding that Mother's relinquishment was made "knowingly, intelligently, and voluntarily," and concluding that the Department had presented evidence that refuted Mother's claim that she was subjected to duress by the Department.

¶8      Based on the relinquishment, the District Court terminated Mother's parental rights. Mother appeals, arguing that her due process right to an adjudicatory hearing was violated, that DPHHS violated Montana law by not making reasonable efforts to reunify the children

4

with their Mother, and that the District Court erred by accepting Mother's relinquishment of parental rights.

## STANDARD OF REVIEW

¶9    A parent or legal guardian's right to revoke a relinquishment and consent to adoption is governed by statute.  Section 42-2-417, MCA; *see also In re Adoption of S.R.T.*, 2011 MT 219, ¶ 11, 362 Mont. 39, 260 P.3d 177.  We review a district court's interpretation and application of a statute, which is a conclusion of law, for correctness.  *In re Adoption of S.R.T.*, ¶ 11 (citations omitted).

¶10    We review a district court's findings of fact to determine whether those findings are clearly erroneous.  *In re Adoption of S.R.T.*, ¶ 12 (citations omitted).  A factual finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record convinces us that a mistake has been committed.  *In re J.C.*, 2008 MT 127, ¶ 34, 343 Mont. 30, 183 P.3d 22 (citations omitted).  It is well established that "the trial court is in the best position to observe and judge the credibility of witnesses, therefore we do not second guess the district court's determination regarding the strength and weight of conflicting testimony."  *In re Adoption of S.R.T.*, ¶ 25 (citations omitted).

## DISCUSSION

¶11    *Did the District Court err by denying Mother's motion to set aside her relinquishment of parental rights?*

¶12    The Legislature established the grounds to set aside a relinquishment of parental rights:

> The court shall set aside a relinquishment and consent to adopt if the individual who executed the relinquishment and consent establishes:
>
> (a) by clear and convincing evidence, before a decree of adoption is issued, that the consent was obtained by fraud or duress . . . .

Section 42-2-417(1), MCA. The statute places a burden of clear and convincing proof upon the parent seeking to revoke a relinquishment of parental rights. "In the context of termination of parental rights cases, we have defined clear and convincing evidence as simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *In re D.B.*, 2007 MT 246, ¶ 29, 339 Mont. 240, 168 P.3d 691 (citations omitted).

¶13 Under the statute, a relinquishment must be set aside if the parent establishes her consent "was obtained by fraud or duress . . . ." Section 42-2-417(1)(a), MCA. While we have defined fraud in the context of this statute, *see In re Adoption of S.R.T.*, ¶¶ 16-17 (parent asserted relinquishment obtained by fraud), we have not stated a definition of duress for purposes of the statute. The District Court used a definition from *Black's Law Dictionary* 504 (6th ed. 1990), which provided, in part, "[a]ny unlawful threat or coercion used by a person to induce another to act (or to refrain from acting) in a manner he or she otherwise would not (or would) . . . ."

¶14 The primary definition of duress in the current version of *Black's Law Dictionary* still reflects the historical meaning of the term as "the physical confinement of a person or the detention of a contracting party's property . . . ." *Black's Law Dictionary* 614 (Bryan A. Garner ed., 10th ed. 2014). However, the law of duress has undergone what has been

6

described as "radical changes" through the nineteenth and twentieth century, and "[t]oday the general rule is that any wrongful act or threat which overcomes the free will of a party constitutes duress." 7 Arthur Linton Corbin, *Corbin on Contracts* § 28.2 (Joseph M. Perillo ed., rev. ed. 2017). Consistent therewith, *Black's Law Dictionary* currently includes the following secondary definition of duress:

> 2. Broadly, a threat of harm made to compel a person to do something against his or her will or judgment; esp., a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition. Duress practically destroys a person's free agency, causing nonvolitional conduct because of the wrongful external pressure.

*Black's Law Dictionary* 614 (Bryan A. Garner ed., 10th ed. 2014). Recognizing this trend, we will consider, in determining whether a parent's consent to the relinquishment of parental rights was obtained by duress, whether the parent was subjected to a wrongful act or threat that overcame her free will.[2]

¶15 Mother argues that her relinquishment was obtained as a result of the DPHHS's wrongful conduct. She testified that she felt pressured by repeated attempts of the

---

[2] Section 28-2-402, MCA, a remnant of the Field Code, provides an antiquated definition of duress:

> (1) unlawful confinement of the person of the party, of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband, or wife;
>
> (2) unlawful detention of the property of any such person; or
>
> (3) confinement of such person, lawful in form but fraudulently obtained or fraudulently made unjustly harassing or oppressive.

In the adoption and child custody context, the Legislature did not intend the definition of duress to be limited to the physical confinement of a person or her property. Therefore, pursuant to § 1-2-107, MCA, we conclude that the Legislature has expressed a contrary intention, and we decline to apply the Title 28 definition of duress to relinquishment of parental rights.

Department to convince her to relinquish her parental rights. Mother estimated that DPHHS contacted her over a dozen times to discuss relinquishment, and testified that DPHHS told her she had a better chance of being able to visit her children if she voluntarily relinquished her rights. Mother testified that at the time she signed the relinquishment, she was depressed due to the alienation of her children, which she attributed to the Department placing the children so far from her, and failing to make adequate arrangements for visitation. She testified that she believed that voluntary relinquishment was her only choice.

¶16 The State counters Mother's duress claim by pointing out that Mother initiated the contact with DPHHS that led to her relinquishment, and participated in three hours of counseling with a long-term placement specialist, who was not the case worker who Mother alleges pressured her. The counselor testified that she carefully discussed relinquishment alternatives with Mother, who did not raise any concerns about duress or undue influence with the counselor, and, rather, explained to the counselor that she believed relinquishment was in the best interest of her children. During the course of the proceeding, Mother had a long time to consider relinquishment and had previously canceled relinquishment-related counselling appointments. The counselor testified to her belief that Mother had provided the relinquishment intelligently and voluntarily. The State also argues that the DPHHS made reasonable efforts to reunify Mother throughout the proceedings, providing a list of actions taken, and offers that Mother's own conduct is often what prevented her from visiting her children.

¶17 Conflicting testimony was presented to the District Court, particularly about Mother's emotional state when she signed the relinquishment, and about the reunification efforts taken by DPHHS. Based upon this evidence, and upon its assessment of the credibility of the witnesses, the District Court determined that Mother's relinquishment was not obtained by duress, reasoning that Mother "did not provide clear and convincing evidence . . . that the Department used improper pressure that overcame her will or compelled her to relinquish." These findings are substantially supported by the testimony of the DPHHS case worker and placement specialist, and Mother has not established that the District Court's factual determinations are clearly erroneous. Thus, we affirm the District Court's denial of Mother's motion to set aside her relinquishment of parental rights.

¶18 Mother also challenges the propriety of the adjudicatory hearing, and of the Department's efforts to reunify her with the children, as separate legal issues. However, given our conclusion that Mother's consent to the relinquishment was valid, these issues have become moot and we need not address them. Adjudication of the children as youths in need of care, or the reasonableness of reunification efforts, are not separate legal requirements when termination of parental rights is based upon relinquishment. *See In re H.T.*, 2015 MT 41, ¶ 15, 378 Mont. 206, 343 P.3d 159; § 41-3-609(1)(a), MCA.

¶19 Affirmed.

/S/ JIM RICE

9

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR