
DA 17-0564

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 89N

IN THE MATTER OF:

B.M., S.J. and B.J.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. CDN 14-129, CDN 14-130,
CDN 14-131
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Julie Brown, Montana Legal Justice, PLLC, Missoula, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

         Joshua A. Racki, Cascade County Attorney, Matthew Robertson, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  March 14, 2018

Decided:  April 10, 2018

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 D.J. (Mother) is the biological mother of B.J., S.J., and B.M. (collectively, the children). Mother appeals the August 28, 2017 order of the Eighth Judicial District Court, Cascade County, denying Mother's motion to withdraw relinquishment of her parental rights.

¶3 On June 10, 2014, the Department of Public Health and Human Services (the Department) filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody (TLC) following several reports concerning the children's welfare. Mother stipulated to adjudicate the children as youths in need of care at the July 11, 2014 show cause hearing. Mother later stipulated to a treatment plan and TLC. The District Court granted several TLC extensions due to Mother's incarceration in Washington. Initially, the Department filed petitions to terminate Mother's parental rights on May 3, 2016. On December 12, 2016, the District Court denied the petitions because the Department had failed to prove that Mother's condition or conduct was unlikely to change within a reasonable time; however, the District Court extended TLC to the Department.

2

¶4 After Mother was arrested for possession of dangerous drugs on February 11, 2017, the Department filed new petitions for termination of Mother's parental rights. The District Court held a termination hearing on August 2, 2017. During the hearing, after a recess was called to allow Mother and her counsel to confer, the District Court was notified Mother wanted to relinquish her parental rights. Based on this notification, the District Court had Mother take the stand and proceeded with a lengthy colloquy. Under oath, Mother stated the following: (1) she met with counsel to consider all available options; (2) no undue pressure occurred during the recess; (3) acknowledged that she understood the effects of relinquishing her rights; (4) she had thought about relinquishing her rights before the August 2 hearing; (5) the relinquishments were her "decision from the beginning"; and (6) relinquishment of her parental rights was in the best interest of the children. Further, the District Court inquired of Mother's intent to waive the three-hour counseling requirement pursuant to § 42-2-409(2), MCA.

¶5 On August 21, 2017, Mother filed a motion to withdraw the relinquishments due to duress. On August 28, 2017, the District Court denied Mother's motion. Subsequently, the District Court issued its Findings of Fact, Conclusions of Law, and Order terminating Mother's parental rights on October 18, 2017. With regards to Mother waiving the three-hour counseling requirement, the District Court determined good cause existed because of the "uncertain status of [Mother's] criminal affairs, the need to give these children permanency, the unqualified nature of [Mother's] stated intent during the August 2 sworn relinquishment colloquy, and her testimony during the colloquy."

3

¶6 A parent or legal guardian's right to revoke a relinquishment and consent to adoption is governed by statute. *In re N.R.A.*, 2017 MT 253, ¶ 9, 389 Mont. 83, 403 P.3d 1256 (citing § 42-2-417, MCA; *In re S.R.T.*, 2011 MT 219, ¶ 11, 362 Mont. 39, 260 P.3d 177). We review a district court's interpretation and application of a statute, which is a conclusion of law, for correctness. *S.R.T.*, ¶ 11 (citations omitted). We review a district court's findings of fact to determine whether those findings are clearly erroneous. *N.R.A.*, ¶ 10.

¶7 A district court may set aside a relinquishment if the individual who executed the relinquishment can establish "by clear and convincing evidence, before a decree of adoption is issued, that the consent was obtained by fraud or duress." Section 42-2-417(1)(a), MCA. Under the statute duress may be established if clear and convincing evidence demonstrates "the parent was subjected to a wrongful act or threat that overcame her free will." *N.R.A.*, ¶ 14.

¶8 We conclude Mother failed to meet her burden of showing clear and convincing evidence demonstrating she was under duress when she executed the relinquishments. Based upon the evidence in the record, it is clear Mother executed her relinquishments knowingly, voluntarily, and intelligently. Throughout the colloquy, Mother stated several times: executing the relinquishments were of her own volition, she understood the consequences of the relinquishments, and executing the relinquishments was for the best interest of the children. We are unpersuaded by Mother's argument that she experienced duress because she believed she would retain some rights—visitation rights—if she executed the relinquishments. Mother explicitly stated she understood she would not retain

4

any parental rights to the children and any visitation was at the discretion of the foster parents. Further, Mother was asked directly if she felt any undue pressure during or from her conversation with her attorney, case worker, and county attorney. Mother answered the question in the negative. Mother's characterization of the colloquy is amiss.

¶9 Further, Mother argues the relinquishments should be set aside because they were obtained through fraud and the District Court did not have good cause to waive the counseling requirement. Neither argument was presented to the District Court. We generally do not consider issues raised for the first time on appeal. *In re T.D.H.*, 2015 MT 244, ¶ 22, 380 Mont. 401, 356 P.3d 457. Nevertheless, the record is clear the relinquishments were not induced by false promises or representations. Moreover, the District Court inquired and articulated the good cause to waive the counseling requirement pursuant to § 42-2-409, MCA. Mother did not object to waiving the counseling requirement. The record is clear that Mother knowingly, voluntarily, and unequivocally executed the relinquishments.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶11 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE