**FILED**

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 15-0769

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 203

IN THE MATTER OF:

A.G. and T.G.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DN 11-9C and DN 14-41C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Kathryn McEnery, McEnery Law Office, P.C., Hot Springs, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

        Martin Lambert, Gallatin County Attorney, Bozeman, Montana

            Submitted on Briefs:  June 8, 2016

                  Decided:  August 23, 2016

Filed:

                        Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     J.G. (Father) appeals from two orders entered by the Eighteenth Judicial District Court, Gallatin County, terminating his parental rights to his daughter A.G. and son T.G. We affirm.

¶2     Father presents the following issue for review: *Did the Department of Health and Human Services (the Department) make reasonable efforts to prevent the necessity of removing A.G. and T.G. as required by § 41-3-423, MCA?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     Father and K.G. (Mother) have two minor children together, A.G., born in 2009, and T.G., born in 2014.  In 2009, K.G. was intoxicated, operating a motor vehicle, and involved in an accident while A.G. was in the vehicle.  As a result, the Department entered into a voluntary services agreement with Mother to work with her chemical dependency issues and parenting of A.G., then only two months old. On February 16, 2010, Mother left A.G. in her unlocked vehicle parked in a lot while she was in a store shopping.  As a result, a police officer cited Mother with endangering the welfare of a child and the Department and Mother entered into a second voluntary services agreement. On February 24, 2011, a police officer arrested Father for assaulting Mother in A.G.'s presence.  Both parents were intoxicated.  Father was charged with Aggravated Assault. The Department entered into a third voluntary services agreement with the family.

¶4     On June 21, 2011, the Department removed A.G. because Mother was attempting to drive to North Dakota under the influence of drugs and alcohol with A.G. in the vehicle.  Mother pled guilty to endangering the welfare of a child and DUI.  On June 24,

2011, the Department filed a petition for emergency protective services and temporary legal custody of A.G. Mother stipulated, but Father contested A.G.'s adjudication as a youth in need of care and the Department's petition for emergency protective services. After conducting a hearing, the District Court adjudicated A.G. a youth in need of care and granted the Department temporary legal custody for six months. The District Court approved a treatment plan and Father signed it on January 9, 2012. The District Court extended temporary legal custody several times.

¶5 On April 30, 2013, the Department placed A.G. with Father for a trial home visit in North Dakota. The visit was successful and Father successfully completed his treatment plan. On June 25, 2013, Mother relinquished her parental rights to A.G. On August 2, 2013, the District Court sentenced Mother to thirteen months commitment to Department of Corrections with five years suspended for criminal endangerment and DUI, both felonies, in connection with an incident wherein Mother left an unrelated child unattended in a vehicle in hot weather. On November 18, 2013, the District Court terminated Mother's parental rights to A.G. On December 17, 2013, the District Court ordered permanent placement of A.G. with Father and the dependent and neglect proceeding concerning A.G. was dismissed. A child protection specialist involved in the case cautioned Father that if Father and Mother resumed their relationship and Mother resumed drinking alcohol, Father needed to protect A.G. Father agreed that protecting A.G. was his priority.

¶6 Upon discharge from her period of commitment, Mother and Father resumed their relationship in North Dakota, Mother resumed drinking alcohol, and the parties married.

Thereafter, Father routinely left A.G. in Mother's care without supervision of Mother's parenting. Father, however, contacted North Dakota police and asked them to remove Mother because she was drunk and out of control in Father's home. Mother returned to Montana because she violated her probation by drinking alcohol in North Dakota. She again drank when she returned to Montana. Father and A.G. then moved back to Montana to live with Mother.

¶7     On May 14, 2014, Father bought Mother a bottle of wine to drink, even though he knew Mother was pregnant. Father admitted he understood that Mother consuming large amounts of alcohol while pregnant can harm the fetus. Father also admitted that he advised Mother to stay in the vehicle and bought her the alcohol because she was drunk and pregnant and he was embarrassed. That night, A.G. was not home and Mother and Father drank and watched movies together. According to Father, Mother "got a little physical" and he locked himself in the bedroom. Neighbors contacted police when they heard Mother and Father arguing. Mother picked the bedroom door lock and Father locked himself in the bathroom until police arrived. When police arrived they believed Mother was intoxicated. They observed alcohol bottles, noticed that Mother was slurring her words, struggling to balance, and leaning on the walls for support. Both Mother and Father were arrested—Father because he had an outstanding warrant and Mother for violating her probation by drinking alcohol. Police contacted the Department. The Department removed A.G. and placed her in kinship care. Again, the Department filed a petition for emergency protective services and temporary legal custody "based on the Father's physical neglect of A.G., including exposure to alcohol abuse, domestic

4

violence, and failure to protect against [Mother] whose parental rights to A.G. were terminated."

¶8 In June 2014, while Mother was five months pregnant, a motorist found her drunk and lying in a roadway. The motorist tried to take her home, but Mother could not describe to him where she lived. He took her to his house instead, where she became aggressive and he contacted police. Police arrived and took Mother to the hospital. Mother went from the hospital to jail where a breath test indicated she had a blood alcohol content of .238. Mother's probation officer contacted the Department. Mother's probation officer also listened to a recording of a phone call Mother made to Father while she was incarcerated wherein Father indicated he planned to flee the state with A.G.

¶9 Later that month, a neighbor observed Father with A.G. According to the neighbor, Father and A.G. were alone at a pond, although he was not allowed unsupervised visits with A.G. at the time. Father was intoxicated and repeatedly dunking A.G. underwater. The neighbor explained that A.G. was crying, choking, and reminding her father that she did not know how to swim, but Father continued dunking and throwing her into the water. The neighbor contacted the Department. Afterwards, Father left a message on the neighbor's husband's phone saying he was so angry he could "kill someone" and warning that his wife should "stay[] the fuck out of [his] life." The neighbor and her husband obtained an order of protection against Father.

¶10 T.G. was born in September 2014, and the Department removed him the following day before Mother and Father could leave the hospital with him. The reasons listed for T.G.'s removal were Mother and Father's history of domestic violence, alcohol abuse,

5

A.G.'s pending dependent and neglect case, the Department's prior history with Mother and Father, and T.G.'s vulnerability as a newborn. T.G. was placed in foster care for several days and then in kinship care with A.G. On October 3, 2014, the Department filed for emergency protective services and temporary legal custody of T.G.

¶11 After conducting a hearing, the District Court adjudicated A.G. a youth in need of care. In its findings of fact and conclusions of law, issued November 10, 2014, the District Court concluded that the Department had made reasonable efforts to prevent A.G.'s removal:

> [I]ncluding providing the Father a Treatment Plan and services in the prior DN; providing reunification services in the prior DN; placing A.G. in kinship placement in this case; and arranging for supervised parenting time in this case. The Court make[s] this determination recognizing per § 41-3-423, MCA, the child's health and safety are of paramount concern in making reasonable efforts.

Mother and Father stipulated to T.G. being a youth in need of care. The District Court concluded reasonable efforts had been made; however, "no services could have been provided to the family which would have prevented or eliminated the need" for T.G.'s removal. The District Court approved a treatment plan and Father signed it on November 26, 2014. The District Court also granted the Department temporary legal custody of A.G. and T.G. for six months.

¶12 Also on November 26, 2014, the Department placed A.G. and T.G. with Mother and Father for a trial home visit. On December 23, 2014, police and the Department were contacted after A.G., aged five, and her cousin, also five, were found walking around town unsupervised. When found, the two said they had been sleeping in a park

6

and someone's dad had dropped them off there.  The children were taken home, where Mother was found intoxicated.  Police were contacted and arrested Mother for violating her probation.  The Department removed A.G. and T.G. from their trial home visit.

¶13 Father did not successfully complete his treatment plan.  On May 26, 2015, the Department filed a petition to terminate Father's parental rights to A.G. and T.G.  Mother relinquished her rights to T.G.  On November 30, 2015, the District Court terminated Mother's parental rights to T.G.  The District Court held a termination hearing for Father.  Father failed to appear.  On December 1, 2015, the District Court terminated Father's parental rights to A.G. and T.G.  In its orders terminating Father's parental rights, the District Court concluded reasonable efforts had been made given the need to protect the children's health and safety.

¶14 Father appeals.

## STANDARDS OF REVIEW

¶15 We review a district court's decision to terminate parental rights for an abuse of discretion.  *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899 (citation omitted).  We review a district court's findings of fact for clear error and its conclusions of law for correctness.  *C.J.M.*, ¶ 10 (citations omitted).

## DISCUSSION

¶16 *Did the Department make reasonable efforts to prevent the necessity of removing A.G. and T.G. as required by § 41-3-423, MCA?*

¶17 "It is the policy in Montana to protect children whose health and welfare may be threatened by those persons responsible for their care, but this protection must be

7

provided in a manner that preserves the family environment, if possible." *In re C.J.*, 2010 MT 179, ¶ 23, 357 Mont. 219, 237 P.3d 1282, citing § 41-3-101(1)(a)-(b), MCA. Section 41-3-423(1), MCA, provides:

> The department shall make reasonable efforts to prevent the necessity of removal of a child from the child's home and to reunify families that have been separated by the state. Reasonable efforts include but are not limited to voluntary protective services agreements, development of individual written case plans specifying state efforts to reunify families, placement in the least disruptive setting possible, provision of services pursuant to a case plan, and periodic review of each case to ensure timely progress toward reunification or permanent placement. In determining preservation or reunification services to be provided and in making reasonable efforts at providing preservation or reunification services, the child's health and safety are of paramount concern.

We have stated that this statute "obligates the Department to make 'reasonable efforts' to reunify families; however, the statute does not define the term and indeed it would be impossible to do so, as each case must be evaluated on its own facts. But clearly the statute does not require herculean efforts." *In re K.L.*, 2014 MT 28, ¶ 41, 373 Mont. 421, 318 P.3d 691. We similarly understand that "reasonable efforts" are required to prevent the necessity of removal; however, these efforts must be tailored to the facts of each case and clearly "herculean efforts" are not required.

¶18 Father argues § 41-2-423, MCA, requires the Department "make reasonable efforts *prior* to the removal in each and every case" and, here, the Department failed to make reasonable efforts prior to removing A.G. in May 2014 and prior to removing T.G., the day after he was born. The Department counters that the children's health and safety required their removal and nothing could have been done to prevent it. We agree with the Department. The Department removed A.G. in May 2014 after Father bought Mother

alcohol during her pregnancy with T.G. and a neighbor contacted police when they could hear Mother and Father arguing. Both parents were subsequently arrested. The Department removed T.G. when he was two days old because he was vulnerable and there were no viable options to assure his in-home safety amid Mother and Father's repeated instances of alcohol abuse and domestic violence.

¶19 Here, the Department had been involved with and receiving referrals regarding this family since A.G. was two months old. The Department entered into three voluntary services agreements before removing A.G. for the first time. The Department provided treatment plans and services during the first removal. Father was successful, Father and A.G. were reunified, and the first proceeding was dismissed. Father was cautioned to prioritize A.G.'s protection, including protecting her from Mother and he agreed that A.G.'s safety was a priority. Father reinitiated his relationship with Mother and married her knowing Mother was an alcoholic and drinking. He recognized that Mother's parental rights to A.G. had been terminated and that Mother had multiple citations for endangering the welfare of his children. In spite of this history, Father allowed Mother to care for A.G. without supervision. Father also recognized that Mother was drinking during her pregnancy and that this could harm the fetus. Nonetheless, Father purchased alcohol for Mother and consumed alcohol with Mother during her pregnancy with T.G.

¶20 Reasonable efforts must be reasonable under the circumstances. What may have been reasonable prior to removing A.G. the first time—providing three separate voluntary services agreements—was not reasonable for the Department prior to removing A.G. for the second time and removing T.G. shortly after his birth. Father argues "the

9

Department made no efforts whatsoever" to prevent A.G.'s removal in May 2014, but fails to assert what efforts the Department could have utilized when Father was arrested that evening on an outstanding warrant. Conversely, we believe it would have been unreasonable for the Department not to resume responsibility for A.G. at that point because Mother's rights had been terminated and Father was taken into custody, leaving no one responsible for A.G.'s health and safety. Father also fails to assert what efforts the Department could have utilized to assure T.G.'s safety after his birth. We believe it would have been unreasonable for the Department to allow Mother and Father to leave the hospital with T.G. knowing T.G.'s vulnerability as a newborn and that Mother and Father had exposed him to alcohol and domestic violence prior to his birth.

¶21 In consideration of the paramount importance of A.G. and T.G.'s health and safety and given the evidence of extensive interaction between the Department and this family from the time A.G. was two months old until Father's termination, we conclude the District Court correctly determined that the Department made reasonable efforts to prevent the necessity of their removal.

## CONCLUSION

¶22 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER

10