DA 17-0377

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 35N

FILED

02/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0377

IN THE MATTER OF:

S.T.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DN 13-002
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Susan Callaghan, Callaghan Law, PLLC, Butte, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

      Merle Raph, Toole County Attorney, Shelby, Montana

Submitted on Briefs:  January 24, 2018

Decided:  February 27, 2018

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 R.T. (Mother) appeals the Ninth Judicial District Court's findings of fact, conclusions of law, and order terminating her parental rights to her child, S.T. We affirm.

¶3 The Department of Public Health and Human Services (Department) filed a petition for temporary investigative authority and protective services for S.T.—then approximately ten years old—on April 24, 2013, after it received a report that S.T.'s parents were using methamphetamine and that S.T. witnessed physical fights between them. The District Court granted the petition and placed S.T. in the custody of his maternal aunt. The court later adjudicated S.T. a youth in need of care and granted the Department temporary legal custody of S.T.

¶4 The Department developed a treatment plan for Mother, which obligated her to: "abstain from all drugs and alcohol"; attend chemical dependency treatment sessions as recommended by Misfits, LLC, a treatment and counseling center; submit to the Department's random drug testing; attend mental health counseling sessions once every two weeks; and participate in domestic violence counseling and a domestic violence support group, among other requirements. Mother did not object to the plan, and the District Court approved it in September 2013.

2

¶5 Mother reported using methamphetamine regularly until August 2013, once in late September 2013, and once in December 2013. She entered inpatient chemical dependency treatment in October 2013, but did not complete the program. With the assistance of Misfits, Mother entered a second treatment program, which she successfully completed. After her discharge, Mother attended eighteen of thirty-two scheduled appointments with Julie Messerly, a licensed addiction counselor at Misfits.

¶6 Mother met with a mental health counselor, Mary Meis, until November 2014, but then stopped when Meis retired. She successfully completed the domestic-violence related requirements of her treatment plan. Mother refused to submit to drug tests on various occasions in 2014 and early 2015, but later cooperated with this requirement.

¶7 The Department filed a petition for permanent legal custody and termination of parental rights with right to consent to adoption in May 2015. The Department alleged that Mother had failed to comply with the treatment plan and that her conduct was "unlikely to change within a reasonable time." The District Court held termination hearings on December 15 and 16, 2016, and on March 20, 2017.

¶8 The court heard testimony from numerous witnesses. Corin Fisch, a mental health counselor with Misfits, testified that she had diagnosed Mother with borderline personality disorder. Fisch stated that Mother was in "partial compliance" with the treatment plan's requirement that she receive mental health counseling, noting that she attended many, but not all, of her appointments. Fisch testified that Mother admitted to having recently used marijuana and a pain pill without a prescription. Mother testified to using marijuana "from time to time."

¶9 Dr. Thomas Krajacich, a clinical psychologist who evaluated S.T., diagnosed S.T. with cognitive disorder, attention deficit hyperactivity disorder, psychotic disorder, anxiety disorder, and oppositional defiant disorder. Dr. Krajacich testified that S.T. required "a stable, safe environment . . . not filled with dysfunction, chaos, domestic abuse or violence."

¶10 After the termination hearings, the District Court issued its findings of fact, conclusions of law, and order terminating parental rights. The court found that Mother had failed to comply with the treatment plan's requirements that she abstain from all drugs and alcohol, attend treatment sessions, and attend mental health counseling appointments. The court determined that it was in S.T.'s best interests to terminate Mother's parental rights. Mother appeals.

¶11 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *In re N.R.A.*, 2017 MT 253, ¶ 10, 389 Mont. 83, 403 P.3d 1256. We review a district court's decision to terminate parental rights for an abuse of discretion. *In re K.A.*, ¶ 19.

¶12 Mother argues that the District Court abused its discretion when it terminated her parental rights by ignoring her significant progress in family therapy and her completion of many elements of her treatment plan. She argues also that the court clearly erred in its factual findings that the "conduct or conditions rendering Mother unfit and/or unable to

4

parent the Child are unlikely to change within a reasonable amount of time," that Mother "continued to be in volatile relationships" even after completion of her domestic violence program and her divorce from S.T.'s father, and that the Department "made reasonable efforts to reunify Mother with her Child and to assist Mother in completing her treatment plan."

¶13 Section 41-3-609(1)(f), MCA, allows a court to order termination of parental rights upon a finding by clear and convincing evidence that:

> the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Under this statute, "[a] parent must fully comply with a treatment plan. Partial or even substantial compliance is not sufficient." *In re A.H.*, 2015 MT 75, ¶ 35, 378 Mont. 351, 344 P.3d 403 (internal citations omitted). "In assessing whether a parent's condition is unlikely to change, the district court should assess a parent's past and present conduct." *In re A.H.*, ¶ 36.

¶14 The parties do not dispute that S.T. is "an adjudicated youth in need of care." *See* § 41-3-609(1)(f), MCA. Substantial evidence supports the District Court's conclusion that Mother did not "fully comply" with her court-ordered treatment plan. *See In re A.H.*, ¶ 35. The record shows that, after approval of the treatment plan, Mother used methamphetamine, marijuana, and pain medication without a prescription, in violation of the plan's requirement that she "abstain from all drugs and alcohol." Mother missed numerous chemical dependency treatment sessions and mental health therapy

appointments throughout the proceedings. Indeed, Mother acknowledges on appeal that she has "not fully completed" the chemical dependency and mental health requirements of her treatment plan. The District Court did not clearly err in determining that Mother's partial compliance was insufficient to establish successful completion of the treatment plan. *See In re A.H.*, ¶ 35.

¶15 The record also provides substantial evidence for the District Court's finding that "the conduct or conditions rendering Mother unfit and/or unable to parent the Child are unlikely to change within a reasonable amount of time." The Department removed S.T. from Mother's custody in April 2013, more than three-and-a-half years before the termination hearings. Robert Kuster, a child protection specialist with the Department, testified that the parents "had ample time to complete their Treatment Plans if that were going to happen." Given Mother's inconsistent efforts to address her chemical dependency and mental health issues, the District Court did not clearly err in concluding that those issues were unlikely to change within a reasonable time. *See* § 41-3-609(1)(f)(ii), MCA. As a reviewing court, we do not ask whether the evidence could support a contrary finding. *See, e.g., Peretti v. Dep't of Revenue*, 2016 MT 105, ¶ 18, 383 Mont. 340, 372 P.3d 447 ("Findings of fact can be based upon substantial evidence despite the fact that there was evidence that may have supported a different result."). The court was statutorily authorized under § 41-3-609(1)(f), MCA, to terminate Mother's parental rights.

¶16 Mother asserts that the court abused its discretion by ignoring her significant progress in family therapy with S.T. Mother and S.T. began joint counseling with Larry Powell, a counselor, in July 2016. The three met for a total of fifteen or sixteen sessions.

6

Powell observed that Mother had "made some progress" in the sessions, but that her relationship with S.T. was still "very troubling." He opined that it would "take a long time" for S.T. to "feel safe with Mom because right now, he doesn't." Despite the incremental success of family counseling, that S.T. still did not feel safe with Mother supports a conclusion that the District Court did not abuse its discretion in terminating Mother's parental rights.

¶17 Mother contends that the District Court's finding that she "continued to be in volatile relationships" was clearly erroneous. The treatment plan stated as a goal that Mother would "provide her child with a safe home," and the District Court noted the importance to S.T. of a "stable home environment with stable relationships." The court referred to the facts that Mother had numerous people living with her throughout the proceedings and that one of those people was removed from the home by law enforcement in 2014. The testimony also referred to incidents where Mother bit her own mother and where she kicked out the window of a police car. Powell testified that Mother had tense and confrontational relationships with her family members and that he noticed during a supervised visit that S.T. appeared scared and threatened by Mother. Sylvia Bryce, S.T.'s CASA guardian ad litem, testified to Mother's "combative" interactions with her in front of S.T. during visitations and joint counseling sessions. Given these facts, the District Court did not clearly err in finding that Mother "continued to be in volatile relationships."

¶18 Finally, Mother contends that the District Court clearly erred in determining that the Department made reasonable efforts to reunify her with S.T., given that the Department did not arrange for family counseling between her and S.T. until July 2016, long after she

had requested such counseling. Section 41-3-423(1), MCA, provides, "The department shall make reasonable efforts to . . . reunify families that have been separated by the state." We have held that "these efforts must be tailored to the facts of each case and clearly 'herculean efforts' are not required." *In re A.G.*, 2016 MT 203, ¶ 17, 384 Mont. 361, 378 P.3d 1177. Although "the 'reasonable efforts' inquiry is relevant to abuse and neglect proceedings," *In re D.B.*, 2007 MT 246, ¶ 25, 339 Mont. 240, 168 P.3d 691, "[s]ection 41-3-609(1)(f), MCA, does not require a specific finding by the District Court that [the Department] engaged in reasonable efforts before terminating a parent child relationship," *In re M.V.R.*, 2016 MT 309, ¶ 41, 385 Mont. 448, 384 P.3d 1058.

¶19 The Department coordinated visits between Mother and S.T. throughout much of the proceedings. When S.T. resisted or refused to attend these visits, Kuster arranged for S.T. to meet with counselors to address his aversion to visiting Mother. The Department also made significant efforts to help Mother comply with her treatment plan by making counseling and treatment referrals and by arranging some of Mother's meetings with providers.

¶20 Mother informed the Department early in the proceedings that she wished to participate in family counseling. The Department attempted to arrange a joint counseling session between Mother and S.T. in 2014 to facilitate visitation, but that session failed when S.T. refused to participate. After Mother and S.T. began meeting with Powell in 2016, Powell testified that Mother's and S.T.'s joint counseling was a "slow and tedious process." S.T. was approximately thirteen years old by that point, and the testimony established that he had a strained relationship with Mother. Kuster testified that he doubted

8

that Mother could repair her relationship with S.T. even with years of additional counseling.

¶21 Mother's contention that an earlier start to family counseling would have altered the outcome of the proceedings is not supported by the record. Given the Department's coordination of visitation and its efforts to help Mother comply with the treatment plan, the evidence, taken as a whole, supports the District Court's finding that the Department made "reasonable efforts" to reunify Mother with S.T. *See* § 41-3-423(1), MCA.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court's findings of fact were not clearly erroneous and its ruling was not an abuse of discretion. The District Court's order terminating Mother's parental rights is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

9