DA 19-0669

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 223

IN THE MATTER OF:

B.F. and A.F.

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District,<br>In and For the County of Cascade, Cause Nos. DDN 15-247(B) and<br>DDN-16-320(B)<br>Honorable Elizabeth Best, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Katy Stack, Attorney at Law, Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
            Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Valerie M. Winfield, Deputy
            County Attorney, Great Falls, Montana

Submitted on Briefs:  June 24, 2020

Decided:  September 8, 2020

Filed:

_____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 D.F. ("Father") appeals from a judgment issued in Montana's Eighth Judicial District Court terminating his parental rights to A.F. and B.F. We affirm.

¶2 We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred when it allowed the children's Guardian ad Litem to question witnesses at Father's termination hearing.*

*Issue Two: Whether the Department of Public Health and Human Services provided reasonable efforts to reunify Father with the children.*

*Issue Three: Whether the District Court erred by terminating Father's parental rights, in violation of § 41-3-609(1)(f), MCA.*

*Issue Four: Whether the District Court allowed temporary legal custody to expire in contravention of Father's due process rights.*

*Issue Five: Whether Father received ineffective assistance of counsel in violation of his constitutional due process rights.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In May 2015, A.F. was born to Father and H.H. ("Mother"). Since October 6, 2015, A.F. has been in the Department of Public Health and Human Services' ("Department") custody. In December 2016, B.F. was born to Father and Mother and has been in Department custody since then. Mother also has an older child, J.H., who is not Father's biological child and is not subject to this appeal. The Department became involved with Father and Mother following reports of inappropriate behavior in front of J.H. and later A.F. Reports included fighting, drunkenness, domestic violence, criminal charges filed against Father and his subsequent incarceration, and Mother's threats of suicide.

¶4      On October 14, 2015, the Department petitioned for emergency protective services ("EPS"), adjudication as a youth in need of care ("YINC"), and temporary legal custody ("TLC") of A.F. The Department's petition stated that Parents had a history of reports alleging physical neglect of A.F. due to domestic violence in the home and Mother's threats of suicide in the presence of J.H. The court set a hearing date of December 4, 2015.

¶5      Father appeared at the show cause hearing and stipulated to the adjudication of A.F. as a YINC but did not offer any admissions to any facts in the petition. The District Court granted TLC to the Department. On January 22, 2016, Father appeared at a disposition hearing and agreed to the Department's proposed treatment plan, which the District Court ordered. The treatment plan specified that Father must "[ensure] there [was] no drinking or drug use of any kind in his home" and that he would "not allow people under the influence of alcohol or any illegal substances into his residence." The District Court and Father agreed that the State was "recommending chemical dependency assessments," which included over the course of Father's treatment plan urinalysis assessments ("UAs"), hair sample testing, and use of a SCRAM bracelet.[1]

¶6      In addition, Father was required to complete a mental health evaluation and adhere to any recommendations; attend individual mental health counseling; complete an anger management assessment and follow any recommendations; complete a parenting class and provide documentation of completion to the Department; complete an in-home parenting

---

[1] Because the Department reported evidence of Father's chemical drug use or abuse, the court ordered Father to engage in alcohol monitoring through application of a SCRAM device starting April 11, 2019. A SCRAM bracelet is an alcohol monitor worn on an ankle used to test the user's sweat for blood alcohol concentration.

3

program upon the return home of the children; provide safe and stable housing in a drug and alcohol free environment; inform Child Protective Services ("CPS") of all individuals living at the home; notify CPS of all moves and provide an address to his home; and maintain weekly contact with CPS workers and sign all necessary releases.

¶7 On July 29, 2016, the District Court, upon stipulation of the parties, extended TLC of A.F. to the Department for six months. On October 21, 2016, a status hearing was held. The Department stated that A.F. and J.H. had been placed with the maternal grandmother and Mother was living in the grandmother's home with them. Father was having scheduled visits with A.F. and J.H. and was attending chemical dependency and mental health counseling appointments.

¶8 In December 2016 B.F. was born. On December 15, 2016, the Department filed a Petition for EPS, adjudication as a YINC, and TLC of B.F., alleging physical neglect due to the ongoing case involving A.F. On January 6, 2017, the court held a show cause hearing as to B.F. Father was not present but was represented by counsel. Father's counsel indicated that Father stipulated to adjudication of B.F. as a YINC and agreed to the same treatment plan that he had in A.F.'s case. The court did not order or present a new treatment plan.

¶9 On January 12, 2017, the Department moved to extend TLC of A.F., indicating that Parents needed additional time to complete their treatment plans. Child Protection Specialist Laura Evenson stated that Father completed parenting classes in August 2016, that he attended most visits with the children, and that he exhibited good parenting skills during visits. Father also completed a mental health evaluation, but the Department alleged

4

he was not following the recommended weekly therapy sessions. Father had not completed a chemical dependency evaluation and he had tested positive for THC on two occasions.[2]

¶10 On January 20, 2017, the court held a hearing on the TLC extension. The Department stated that Father had not yet completed his treatment plan. Father stated that he was working full-time and did not have a vehicle which made it difficult to complete drug tests and attend all appointments. On April 14, 2017, the District Court adjudicated B.F. as a YINC. The court ordered the same treatment plan for Father that was ordered in A.F.'s case. On July 13, 2017, the Department moved to extend TLC. In Evenson's affidavit in support of the Department's motion, she stated Father was not fully engaged with his plan because he was not attending all his UA tests and consequently was denied visits with the children. On August 3, 2017, the court held a review and extension of TLC hearing for the children and granted extension for six months.

¶11 On September 7, 2017, the court held a hearing on the permanency plan for A.F. and B.F. The Department stated that the permanency plan was for termination of parental rights and to establish guardianship for A.F. and B.F. with their maternal grandmother. Evenson testified that Father was hostile toward her and made excuses about missing appointments. Evenson stated that the Department had added chemical dependency tasks

---

[2] Evenson's affidavit in support of Department's motion to extend TLC reflected that Father was required to receive a chemical dependency evaluation and treatment per his court-ordered treatment plan. However, Father's initial treatment plan from A.F.'s case did not require Father to complete chemical dependency tasks. The Department's prior motion to extend TLC in A.F.'s case did not reflect that Father had any chemical dependency tasks on his treatment plan and the District Court did not order a new treatment plan for Father.

to Father's treatment plan after B.F. was born. Evenson asserted that Father was bonded with the children and parented well during visits.

¶12 The Department did not file a motion to extend TLC in January 2018. However, the Department requested that the court extend TLC and to maintain the status of the case because Parents routinely failed to maintain engagement in the treatment plan. On January 17, 2018, the court issued an Amended Order regarding the review hearing held on August 3, 2017, and granted the Department extended TLC until June 2018. The court also stated that Mother and Father, both through counsel, stipulated to the extension of TLC. The court also scheduled a review hearing for June 28, 2018, prior to the expiration of TLC.

¶13 On June 26, 2018, the Department again moved to extend TLC. Evenson's affidavit in support of the Department's motion stated that Father had not completed a chemical dependency evaluation and he was non-compliant with UA tests. Father was attending mental health and anger management sessions at Misfits, LLC, in Great Falls. Evenson stated the Department had not commenced in-home services for Father as he had not demonstrated a period of sobriety or engagement with the Department. On June 28, 2018, the District Court held a hearing on the motion to extend TLC. Father told the court he had completed most tasks on his treatment plan but acknowledged he was not compliant with his UAs and needed to be consistent with visits with the children. Father believed Evenson favored Mother and maternal grandmother and had not provided him a chance to parent. On September 27, 2018, the Department filed a notice of permanency plan. The plan was for reunification of the children with Parents and adoption or guardianship with their maternal grandmother if reunification was not successful.

6

¶14 On January 9, 2019, the Department moved to extend TLC for up to six months. The Department's affidavit stated that Father had limited contact with Evenson. Evenson also stated that Father was non-compliant with the chemical dependency components of his treatment plan. At the time, Father had completed two chemical dependency evaluations, and neither had treatment recommendations. On January 10, 2019, the court held a review hearing and a hearing on the State's petition to extend TLC. On January 15, 2019, the court issued an order extending TLC for A.F. and B.F. finding it in the children's best interests.

¶15 On March 4, 2019, the court appointed an attorney Guardian Ad Litem ("GAL") for the children. On April 4, 2019, the GAL filed a report describing a misdemeanor trial of Father's held on April 3, 2019, in Great Falls Municipal Court. Father's trial was reportedly held in abstentia because Father was at work. The report also stated that Father was convicted of disorderly conduct and obstructing a peace officer for an incident involving Mother's family and friends. The GAL opined that underlying behavioral issues with the parents had not significantly changed and their compliance with their treatment plans was sporadic. The GAL recommended termination of both parents' rights to A.F. and B.F. and adoption by their maternal grandmother.

¶16 On July 9, 2019, the Department filed a petition for termination of Father's parental rights for A.F. and B.F. The petition alleged that Father failed to complete his treatment plan, had not maintained sobriety, did not have stable housing, had sporadic contact with CPS, failed to comply with his UA testing schedule and manage his SCRAM bracelet, and the children had been in foster care for over 30 months. The court extended TLC until a

7

hearing regarding the termination petition could be held. The hearing was ultimately continued until October 25, 2019.

¶17 Father appeared at the termination hearing with counsel. The Department called Evenson as its only witness, who testified that she began working on the case March 1, 2016, and was the third CPS worker who worked with the family. Evenson stated she received a certificate of completion for Father's anger management sessions, but never received notice of completion for his chemical dependency or mental health tasks despite repeated requests to Father and the Misfits program. Father did complete his parenting classes.

¶18 Evenson testified that between 2017 and 2019, she discussed reunification with Father multiple times, but that in 2018 Father "fell away" from the Department. Evenson also testified that in March 2019 she met with Father and the child welfare manager for the Department and Father expressed an interest in "fully engag[ing]" in his treatment plan and to "resume his visits with his daughters." Evenson testified that after this discussion, Father never met with or contacted the provider from the Youth Dynamics[3] program to transition the children into Father's residence. Evenson also testified Father did not regularly call her during weekly scheduled check-ins and did not consistently meet her or call to reschedule bi-monthly Friday meetings despite his agreement to these meetings and times.

---

[3] Youth Dynamics is a Montana non-profit children's mental health agency that provides services to families such as therapy, case management, family education and support, mentoring, and therapeutic youth home care.

8

¶19 Evenson testified that initially she had not able to perform a home visit for Father because he did not update her about his address. She then testified that on April 10, 2019, she did a home visit at Father's residence and another visit shortly thereafter and both went well. Evenson stated the main reason she had not progressed to in-home services earlier in the case was because Father did not provide his address. Evenson testified Father generally did well during visits with the children but he was confrontational and agitated with her at times. Evenson also testified that as the children got older, she "had a lot of concerns" about some of the visits because Father was impatient, expressed some anger, and was "over-disciplining" A.F.

¶20 Evenson testified that she was not able to move A.F. and B.F. toward longer unsupervised visits and an in-home safety plan because she "could not determine his sobriety at that point." She testified that Father was "non-compliant the entire time with providing UAs, and we didn't . . . [get] one successful report from the SCRAM bracelet," suggesting that Father was using alcohol and tampering with the blood alcohol samples. Evenson also testified Father engaged in acts of violence throughout the case, including being arrested for fighting and breaking Mother's car windows. Evenson could not recall any charges being filed. Father's counsel objected to Evenson's attempts to describe Father's criminal history and the District Court sustained the objection. Evenson opined Father lacked the ability to parent the children because of inconsistency, anger issues, violent behaviors, failure to work with the Department, and failure to complete his treatment plan.

9

¶21	On cross-examination, Evenson stated Father requested a different CPS worker and made complaints to the Department supervisors about Evenson's refusal to work with him; however, she stated that Father was usually polite with her and agreed to complete all his treatment plan tasks. Evenson stated that Father completed a chemical dependency evaluation but no treatment was recommended, and that Father completed a 24-week anger management program but was not aware whether Father completed his mental health requirements. Evenson was aware Father was living with his partner and her two children, and she did not have reason to remove those children from the home.

¶22	The GAL sought to question Evenson. Father's attorney objected to the GAL questioning a witness. The court overruled the objection, allowing the GAL to question Evenson within the scope of her GAL duties. The GAL questioned Evenson regarding Evenson's and Father's conversations about Father's misdemeanor trial in Municipal Court. Evenson could not recall whether Father was convicted of any charges. The GAL then asked Evenson whether she would be surprised if he was convicted. Evenson replied, "No."

¶23	Father's attorney called his therapist from Misfits, Corin Fisch, as a witness. Fisch testified that in November 2015, she completed a mental health evaluation on Father and recommended he attend individual counseling sessions once a week. Fisch also testified that on June 28, 2017, she completed an anger management evaluation on Father and recommended he take an anger management course, which Father completed in May 2018.

¶24	Fisch testified that on September 28, 2017, Father completed another mental health evaluation and Fisch again recommended weekly individual counseling. Fisch testified

Father completed his mental health treatment with her and she notified Evenson of his completion. She further testified that her office faxed Evenson copies of Father's chemical dependency and mental health evaluations and his anger management certificate. Fisch stated that even though Father completed his mental health sessions he continued to see her therapeutically when he was struggling. Fisch testified that on November 15, 2017, she performed a chemical dependency evaluation on Father.

¶25 Fisch testified further as to a call she had with Evenson on Father's behalf during the case. Fisch stated that Evenson told her that she was doing nothing to help Father and that Evenson's demeanor was "vile" towards Father when Fisch spoke with her about him. Fisch stated Father felt discouraged because he thought Evenson and the Department were working against him and stated "I think through all of it, [Father] has been fighting to be a parent, a father to his children, and . . . a year and a half ago, he completed everything that he needed to complete." Fisch testified she did not understand why Father was not permitted increased visitation with the children, particularly because Evenson had told her that Father was an "excellent parent, and he was probably one of the most skilled parents they had seen in a really long time, and that he did really well with his [children]." Fisch also testified Father was very open to therapeutic work and made significant progress in their therapy sessions.

¶26 The GAL was permitted to question Fisch over continued objection. The GAL inquired about subpoenaed documents from Father's Misfits program in Great Falls. Fisch was unaware that only one evaluation was provided and did not know why all of Father's evaluations and records were not provided in response to the GAL's subpoena. The GAL

11

asked whether Fisch was aware that Father was involved in an incident on October 14, 2018, where Father confronted Mother's family with a gun. Fisch responded she was not aware of that incident or whether Father was convicted of a crime stemming from the incident. The GAL then asked whether Fisch was aware of Father's arrests in 2017 and 2018. Fisch testified she was. Fisch was not aware the court ordered Father to wear a SCRAM bracelet to monitor his drug and alcohol use.

¶27 The court found that Father's treatment plan was unsuccessful and that his behavior was unlikely to change within a reasonable time. The District Court terminated Father's parental rights. On October 29, 2019, the court issued a termination order, finding "Father has not completed his treatment plan and the portions attempted are inadequate to address the Department's ongoing concerns," and that Father's unfitness was unlikely to change in a reasonable time based on his failure to complete his treatment plan.

¶28 The District Court found the Department made reasonable efforts to reunify the children, including referrals to providers for chemical dependency, mental health, anger management/domestic violence, parenting education, and family-based and visitation services. The court concluded the Department proved by clear and convincing evidence that termination of Father's parental rights served the best interests of the children. Father appeals.

**STANDARDS OF REVIEW**

¶29 "A district court's ultimate decision to terminate parental rights is reviewed for abuse of discretion." *In re P.T.D.*, 2018 MT 206, ¶ 16, 392 Mont. 376, 424 P.3d 619 (citation omitted). We review a district court's findings of fact to determine whether the

12

findings are clearly erroneous. *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, 130 P.3d 619 (citation omitted). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record convinces this Court a mistake was made." *In re J.B.*, 2016 MT 68, ¶ 10, 383 Mont. 48, 368 P.3d 715 (citation omitted). We review a district court's conclusions of law for correctness. *P.T.D.*, ¶ 17. Whether a parent has been denied his or her right to due process is a question of constitutional law subject to plenary review. *In re A.J.C.*, 2018 MT 234, ¶ 28, 393 Mont. 9, 427 P.3d 59 (citation omitted).

## DISCUSSION

¶30     *Issue One: Whether the District Court erred when it allowed the children's Guardian ad Litem to question witnesses at Father's termination hearing.*

¶31     Father argues that the District Court erred by allowing the GAL to question witnesses at the termination hearing regarding hearsay evidence that was not admitted or provided to the parties. Specifically, Father references the GAL's questioning of Evenson regarding Father's alleged criminal charges and arrests without admitting any actual evidence of criminal conduct, alleging Evenson was unaware of the specifics of Father's alleged criminal conduct such that Evenson's testimony was hearsay and lacked foundation. In addition, Father argues that the GAL inappropriately discussed Father's alleged conviction in Municipal Court during closing arguments which relied on hearsay evidence and lacked foundation such that it was improper for the District Court to rely on these statements when considering whether to terminate Father's parental rights.

13

¶32 In abuse and neglect cases, a child is entitled to assert the child's constitutional rights. Section 41-3-101(1)(d), MCA. To ensure children may assert their rights and interests as parties in abuse and neglect cases and termination hearings, they are required to have a GAL—that is, either a court appointed special advocate ("CASA"), or when unavailable, an attorney or other qualified person, provided they are trained to serve as a child's court-appointed representative. Section 41-3-112(3)(a)-(f), MCA.

¶33 The general role of a GAL in abuse in neglect proceedings is to represent children's best interests, and to perform general duties and conduct investigations to ascertain the facts constituting the alleged abuse or neglect. Section 41-3-112, MCA; *In re J.D.*, 2019 MT 63, ¶ 44, 395 Mont. 141, 437 P.3d 131. This Court has held that "[A] district court may permit an attorney CASA appointed as a child's GAL to conduct limited questioning of a witness to assist in performing his or her statutory functions as an agent of the court, in the best interests of the child." *J.D.*, ¶ 52.

¶34 Here, the children's GAL was not a CASA or "other qualified person under the statute," but an attorney. Although the children's GAL was not a party and did not represent A.F. and B.F. in an attorney capacity, her role was "to appear and participate in all proceedings to the degree necessary to adequately represent the child and make recommendations to the court concerning the child's welfare." Section 41-3-112(3)(e), MCA; *J.D.*, ¶ 52. Accordingly, it is irrelevant that the GAL was not a CASA in this case; the intended purpose is the same—to explore and ascertain the facts constituting the alleged abuse or neglect.

14

¶35 Because a trial court retains broad discretion to allow cross-examination of witnesses, and the risk to children is that their fundamental liberty interests are subject to violation absent such questioning given that other legal representation was not assigned, we find that the District Court did not err in allowing the children's GAL to cross-examine Evenson and Fisch. *J.D.*, ¶ 52. Father's criminal behavior is relevant as to whether it is in the children's best interest to maintain a relationship with Father or whether Father's behavior is of such a nature that termination of that relationship is necessary. Information contained in a GAL's report or testimony regarding such report is not hearsay when used to form the basis of the GAL's opinion as to the best interests of the children. Section 41-3-112(4), MCA.

¶36 While a district court may permit an attorney appointed as a child's GAL to conduct limited questioning of a witness to assist in performing the GAL's statutory functions as an agent of the court in the best interests of a child, the GAL's examination of the CPS worker and Father's therapist insinuating criminal and/or violent behavior by Father was beyond the degree necessary to adequately inform the court of what course of action would be in the children's best interests. Here, although the GAL questioned the CPS worker about purported criminal behavior on Father's part, the GAL failed to make available any evidence to support her line of questioning that Father had actually been convicted of or engaged in any violent or criminal behavior. *J.D.*, ¶ 55. In sum, it lacked foundation and should not have been permitted.

¶37 Despite the error in permitting this line of inquiry, the record supports the District Court's determination to terminate Father's parental rights without consideration of the

15

information learned from the GAL's examination of the CPS worker or Father's therapist, and the District Court did not rely on that line of questioning in its determination that Father failed to complete his treatment plan and the conduct or condition rendering him unfit to parent was not likely to change in a reasonable period of time. The District Court's error was harmless. *See In re I.M.*, 2018 MT 61, ¶ 39, 391 Mont. 42, 414 P.3d 797.

¶38    *Issue Two: Whether the Department of Public Health and Human Services provided reasonable efforts to reunify Father with the children.*

¶39    Father argues that that District Court erred in terminating Father's rights because the Department failed to provide reasonable efforts to reunify him with the children.  Father argues that the Department did not act in good faith while working with Father because Evenson told Fisch that she would not do anything to help Father reunify with the children, Evenson required Father to complete multiple onerous chemical dependency tasks even though there were no chemical dependency tasks on his treatment plan, and Evenson denied Father visitation with the children.

¶40    "Because a natural parent's right to the care and custody of a child is a fundamental liberty interest, a district court must adequately address each applicable statutory requirement before terminating an individual's parental rights." *In re R.L.*, 2019 MT 267, ¶ 17, 397 Mont. 507, 452 P.3d 890 (citation omitted).  Section 41-3-423(1), MCA, is one such requirement, providing in part:

> The department shall make reasonable efforts to prevent the necessity of removal of a child from the child's home and to reunify families that have been separated by the state.  Reasonable efforts include but are not limited to voluntary protective service agreements, development of individual written case plans specifying state efforts to reunify families, placement in the least disruptive setting possible, provision of services pursuant to a case plan, and

16

periodic review of each case to ensure timely progress toward reunification or permanent placement. In determining preservation or reunification services to be provided and in making reasonable efforts at providing preservation or reunification services, the child's health and safety are of paramount concern.

¶41 While we must determine whether the Department made reasonable efforts, this determination is not a separate requirement for termination, but may be a predicate for finding that the conduct or condition rendering a parent unfit, unwilling, or unable to parent is unlikely to change within a reasonable time. *See* § 41-3-609(1)(f)(ii), MCA. With regard to the termination of parental rights, the analysis of reasonable efforts is highly fact dependent. *In re R.J.F.*, 2019 MT 113, ¶ 27, 395 Mont. 454, 443 P.3d 387 (citations omitted).

¶42 To meet this reasonable effort requirement, the Department must in good faith develop and implement treatment plans designed to preserve the parent-child relationship and the family unit. *In re D.B.*, 2007 MT 246, ¶ 33, 339 Mont. 240, 168 P.3d 691. "[A] parent has an obligation to avail herself of services arranged or referred by the Department and engage with the Department to successfully complete her treatment plan." *R.J.F.*, ¶ 38. Thus, the Department must make "reasonable" efforts, not "herculean" efforts, to reunite parents with their children. *In re A.G.*, 2016 MT 203, ¶ 17, 384 Mont. 361, 378 P.3d 1177.

¶43 Based on our review of the record, the District Court did not err in determining the Department provided reasonable efforts before terminating Father's parental rights to A.F. and B.F. Father was provided referrals for evaluations, visitation with the children, CPS support, referrals to providers for chemical dependency, mental health, anger management and domestic violence, parenting education, and family-based services. Father stipulated

17

to adjudication to the children as YINCs and a treatment plan for both children, thus agreeing to adhere to the requirements set forth by the Department.

¶44    Although Father completed some of the services required, he regularly failed to demonstrate consistency and stability sought by the Department, failing to ensure there was no drinking or drug use in his home, notify CPS of all moves and provide updated addresses, and maintain weekly contact with CPS workers and sign all necessary releases. The court and the Department both acknowledged throughout the case that Father routinely failed to fully engage with his treatment plan, resulting in seven TLC extensions, failed to attend all appointments and maintain contact with CPS, and failed to communicate the completion of other aspects of his treatment plan to the Department.

¶45    While Father cites to CPS Evenson's stringent chemical dependency and drug testing requirements, his stipulation to the treatment plan indicates that he knew the expectations and nonetheless failed to adhere to these requirements.  Moreover, Father's treatment plan included specific tasks to address sobriety requirements, including UA testing, hair follicle tests, and monitoring with a SCRAM bracelet, many of which Father did not adhere to.  Simply because Father followed several tasks required in his treatment plan does not indicate that the treatment plan was "successful," nor does it indicate that the Department failed to provide Father reasonable efforts—i.e., good faith assistance—to complete his plan.

¶46    The Department worked with Father for almost four years.  The District Court did not abuse its discretion in determining the Department provided Father with reasonable efforts prior to terminating his parental rights to A.F. and B.F.

¶47    *Issue Three: Whether the District Court erred by terminating Father's parental rights, in violation of § 41-3-609(1)(f), MCA.*

¶48    Father argues that his treatment plan did not contain any tasks regarding chemical dependency, including a requirement to provide drug tests, a chemical dependency evaluation, or chemical dependency treatment such that the District Court erred by finding that Father failed to complete his treatment plan based on chemical dependency issues.  In addition, Father argues the District Court erred by finding that the condition rendering Father unfit was unlikely to change within a reasonable time because CPS Evenson did not provide Father reasonable efforts to reunify Father with the children; Father's inconsistent visitation with the children does not support a finding that he was unlikely to change within a reasonable time; and the court's consideration of Father's criminal conduct was based on inadmissible hearsay evidence such that the District Court abused its discretion in terminating his parental rights.

¶49    A parent has a fundamental right to the care and custody of a child which must be protected by fundamentally fair practices.  *D.B.*, ¶ 17.  A district court may terminate the parent-child relationship if a child is adjudicated a YINC and the court finds "by clear and convincing evidence that: (1) an appropriate court-approved treatment plan was not complied with by the parents or was not successful; and that (2) the conduct or condition of the parents rendering them unfit was unlikely to change within a reasonable time." *In re X.M.*, 2018 MT 264, ¶ 18, 393 Mont. 210, 429 P.3d 920 (citing § 41-3-609(1)(f)(i), (ii), MCA).

19

¶50     Here, it is undisputed that A.F. and B.F. were adjudicated as YINCs pursuant to Father's stipulations. And it is undisputed that termination of Father's parental rights was in the best interests of the children given that that the children were placed in grandmother's home for four years. Therefore, Father's claim is based only on whether he successfully completed his treatment plan.

¶51     Compliance with some requirements of a treatment plan is not sufficient for compliance with a treatment plan under statute. *In re D.F.*, 2007 MT 147, ¶ 30, 337 Mont. 461, 161 P.3d 825 (citation omitted); § 41-3-609(1)(f)(i), MCA. Further, complying with a treatment plan—that is, completing all the tasks—is not equivalent to "successful" completion of a treatment plan. *D.F.*, ¶ 36. Again, Father's approved treatment plan, which he agreed to,[4] contained specific sobriety components from its inception. Father routinely failed to adhere to chemical dependency evaluations required by Evenson throughout treatment because he felt they were unnecessary. Consequently the District Court found that the treatment plan was unsuccessful. The record evidence reflected that Father kept drinking such that he was unsuccessful in meeting this undisputed part of his treatment plan, failed to provide appropriate documentation of program completion, failed to disclose to his therapist the SCRAM alcohol monitor requirement, and failed to disclose his new conviction for violent behavior.

---

[4] In a January 2016 hearing, Father agreed with the District Court that the State was "recommending chemical dependency assessments"; at a September 2017 hearing, Evenson testified that chemical dependency was added to the treatment plan when B.F. was born.

¶52 Father challenges the reasonable efforts made by the Department, yet Father stipulated to the treatment plan provided by the Department, and nonetheless failed to jump through the necessary hoops required. It is of no fault of the District Court that Father felt that some of these tasks were unnecessary, or that Father's engagement and completion of other aspects of this plan were not a success. The District Court did not err in terminating Father's parental rights.

¶53 *Issue Four: Whether the District Court allowed temporary legal custody to expire in contravention of Father's due process rights.*

¶54 Father argues that TLC expired on February 2, 2018, because the Department did not file a motion to extend TLC prior to expiration. Consequently, Father argues that the District Court improperly extended TLC for nearly five months after it expired, in contravention of his due process rights.

¶55 An order for TLC may be in effect for no longer than six months. Section 41-3-442(2), MCA. Prior to expiration of an order for TLC, the attorney general, county attorney, or an attorney hired by the county shall petition for an extension of TLC not to exceed six months. Section 41-3-442(4), MCA. If TLC is granted, the court must state the reasons why the child was not returned home and the conditions upon which the child may be returned home and specifically find that an extension of TLC is in the child's best interest. Section 41-2-422(6), MCA.

¶56 Here, the Department did not file a formal motion to extend TLC in January 2018. Nonetheless, the Department requested the court extend TLC and maintain the status of the case because Parents routinely failed to engage in their treatment plans. Therefore, while

procedurally unusual, TLC did not technically expire on February 2, 2018, as Father asserts, because the court issued an Amended Order on January 17, 2018, extending TLC, acknowledging that both Mother and Father stipulated to the extension until June 2018. Accordingly, the District Court did not err in extending TLC of the children to the Department.

¶57   *Issue Five: Whether Father received ineffective assistance of counsel in violation of his constitutional due process rights.*

¶58   Father argues that his due process right to effective assistance of counsel was violated because counsel: (1) failed to advocate for placement of the children with Father when TLC expired and Father had completed his treatment plan tasks; (2) failed to move for dismissal of the case when TLC expired; (3) failed to investigate Father's claims that CPS Evenson was prejudiced against him; (4) failed to inform the court as to CPS Evenson's lack of reasonable efforts and required the court appoint a new CPS worker; (5) failed to object to the Department's requirement that Father complete chemical dependency tasks not included in his treatment plan; and (6) failed to object to the GAL's introduction of hearsay evidence regarding his alleged criminal conduct at status hearings, reports, and the termination hearing.

¶59   "Parents have a due process right to effective assistance of counsel in termination proceedings." *In re B.H.*, 2020 MT 4, ¶ 49, 398 Mont. 275, 456 P.3d 233 (citations omitted). Whether assistance was effective requires review of counsel's training, experience, and advocacy. *In re A.S.*, 2004 MT 62, ¶ 26, 320 Mont. 268, 87 P.3d 408. Ineffective assistance of counsel requires reversal only if the parent suffered prejudice.

*In re B.M.*, 2010 MT 114, ¶ 22, 356 Mont. 327, 233 P.3d 338. "Effective advocacy requires investigating the case, researching and understanding the law, meeting with the client, and assiduously advocating for the client." *In re E.Y.R.*, 2019 MT 189, ¶ 22, 396 Mont. 515, 446 P.3d 1117. To provide effective assistance of counsel, attorneys representing parties and entities involved in abuse and neglect proceedings involving a non-offending, non-custodial parent must understand and assiduously advocate the legal framework and Department policy provided. *A.S.*, ¶ 28.

¶60 Father's ineffective assistance of counsel claims do not identify which of his three attorneys, appointed over the course of his four-year case, was ineffective. Accordingly, the Court is left to speculate as to whether these attorneys were lacking in necessary training and experience required to evaluate ineffective assistance claims. Moreover, Father has failed to identify that counsel's ineffectiveness resulted in prejudice to Father. Father and his attorneys were aware of the "no drinking or drug use" provision of the approved treatment plan and stipulated that the plan would require chemical dependency assessments. And even if Father were allowed a new CPS worker to oversee his case, this change would not have necessarily changed the result of the termination proceeding. Finally, counsel's alleged failures are irrelevant given our holding that the Department provided Father with reasonable efforts for reunification. *See In re A.L.P.*, 2020 MT 87, ¶ 29, 399 Mont. 504, 461 P.3d 136.

**CONCLUSION**

¶61 The Department provided Father with reasonable efforts to reunify Father with A.F. and B.F. prior to terminating his parental rights. The District Court did not err in

23

determining that Father failed to successfully complete his treatment plan such that termination of Father's rights was warranted. Moreover, given the children's constitutional protections, the District Court did not abuse its discretion in allowing the GAL to question witnesses at the termination hearing. However, the scope of the GAL's questions in this case were harmless error. The District Court also did not allow TLC to expire, undermining Father's due process rights, because the court issued an order prior to expiration of TLC. Finally, Father did not receive ineffective assistance of counsel because he failed to indicate how the alleged claims prejudiced his substantial rights.

¶62    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE