JUSTICE RICE
delivered the Opinion of the Court.
¶1 J.B., Sr., appeals from an order entered by the Fourth Judicial District Court, Missoula County, terminating his parental rights to J.B., Jr.
¶2 We affirm, and address the following issues:

1. Did the District Court err by holding the treatment plan was appropriate?

2. Did the District Court abuse its discretion by terminating Father’s parental rights?

PROCEDURAL AND FACTUAL BACKGROUND
¶3 J.B., Jr. (J.B.) was only a few weeks old when his parents, J.B., Sr. (Father), and K.S. (Mother), took him shoplifting at Missoula’s JC Penney store. When confronted by security, Mother fled in her car with J.B. Father pulled a knife, declaring he was “not returning to prison,” and fled on foot. At the time, Father was on probation, and two outstanding felony warrants for his arrest had been issued from Ravalli County.
¶4 Long before this incident, the Department of Public Health and Human Services, Child and Family Services Division (Department), were familiar with Mother and Father. The Department had previously been involved with proceedings regarding J.B.’s siblings, including the termination of Father’s parental rights to J.B.’s brother, E.B., on grounds of abandonment. After receiving the report of the shoplift-turned-robbery, the Department investigated the incident and filed a petition for Emergency Protective Services, Adjudication of J.B. as a Youth in Need of Care, and Temporary Legal Custody. The District Court granted the Department’s petition upon Mother’s and Father’s stipulation to the adjudication of J.B. as a Youth in Need of Care. J.B. was then placed in a foster home with his sibling, E.B.
¶5 In the Ravalli County action related to the two outstanding felony warrants, Father was sentenced to ten years suspended on each felony, to run concurrently with an unspecified sentence Father was serving in another Ravalli County action. The record does not indicate the length of the other sentence. In the Missoula County robbery action that arose from the incident here, the District Court, citing Father’s seven prior felony convictions, sentenced him to the Department of Corrections for 20 years with 18 years suspended, to run concurrently with his sentences in Ravalli County.
¶6 The Department provided a treatment plan for Father while he *50 was incarcerated, which was intended to preserve Father’s parent-child relationship with J.B. The treatment plan had several goals designed to provide the Department with “the necessary information to determine whether it will be safe for [J.B.] to return to [Father’s] care,” and to instill “long-term change and... lasting stability so that further intervention by [the Department] is no longer needed.” The treatment plan required Father to perform numerous tasks, including refraining from committing further criminal offenses, completing a chemical dependency evaluation, and attending available parenting classes. The treatment plan stated the completion date for these tasks was “ongoing.” Father, represented by counsel, stipulated to the treatment plan.
¶7 Although Father completed a chemical dependency evaluation and attended group therapy sessions, he was involved in numerous behavioral incidents while incarcerated, including flooding his cell, breaking a sprinkler head, and not complying with orders. At the termination hearing, Father testified:
Q: When you went into Missoula County Detention Facility in
June of 2014, you were involved in several behavioral incidents in
there, correct?
A: Yes, a few.
Q: Including flooding your cell?
A: Yes.
Q: Breaking a sprinkler head?
A: Yes.
Q: Disruptive behavior and not complying with orders?
A: Yes.
Q: And then just recently in boot camp you were disciplined for
violating and refusing to comply with a direct order, correct?
A: Yes.
¶8 The Department, alleging Father’s treatment plan had not been successful, petitioned the District Court to terminate Father’s parental rights to J.B. The District Court agreed, holding the treatment plan “was not successful” and that Father had an “inability to conform his conduct to the law” that was “unlikely to change within a reasonable time.” J.B. had been living in foster care with his brother, E.B., for over 15 months at that time. Father appeals.[1]
*51 STANDARD OF REVIEW
¶9 Conclusions of law are reviewed to determine whether the district court interpreted the law correctly. In re J.N., 1999 MT 64, ¶ 11, 293 Mont. 524, 977 P.2d 317.
¶10 A district court’s decision to terminate parental rights is reviewed for an abuse of discretion. In re A.N.W., 2006 MT 42, ¶ 29, 331 Mont. 208, 130 P.3d 619. Findings of fact are reviewed for clear error. In re D.B., 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces the Court a mistake was made. In re 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899. We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court’s findings. In re B.D., 2015 MT 339, ¶ 5, 381 Mont. 505, 362 P.3d 636.
¶11 A district court’s decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact clearly erroneous that amounts to an abuse of discretion. In re M.N., 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047.
DISCUSSION
¶12 Under § 41-3-609(l)(f), MCA, a court may terminate parental rights upon a finding, established by clear and convincing evidence, that the child is an adjudicated youth in need of care and both of the following exist:
(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.
¶13 Father makes two challenges on appeal. First, he argues the District Court erred by concluding the treatment plan was appropriate. Second, he argues the District Court erred by concluding the treatment plan was not successful.
¶14 1. Did the District Court err by holding the treatment plan was appropriate?
*52 ¶15 Father argues the treatment plan was not appropriate because it provided no deadlines, instead stating the completion date for each task was “ongoing.” The Department counters that Father did not properly preserve this issue for review by timely objecting to the treatment plan.
¶16 “Where a parent fails to object to a treatment plan in a timely manner, the parent waives any argument regarding the propriety of the treatment plan.” In re T.S., 2013 MT 274, ¶ 25, 372 Mont. 79, 310 P.3d 538 (citing In re C.J.M., 2012 MT 137, ¶ 16, 365 Mont. 298, 280 P.3d 899); see also In re A.A., 2005 MT 119, ¶¶ 21-28, 327 Mont. 127, 112 P.3d 993 (parent who, with representation of counsel, stipulated to several treatment plans, and failed to object in a timely manner, waived her argument that the treatment plans were not appropriate).
¶17 The treatment plan, upon Father’s stipulation, was approved by the District Court in March 2014. Father was represented by counsel. It was not until just before the termination hearing, in March 2015, that Father raised an objection to the lack of deadlines in his treatment plan. If Father was legitimately concerned about the lack of deadlines in the treatment plan, he could have raised the issue when the plan was before the District Court for approval. Neither did Father raise a concern about the lack of deadlines during the course of the plan’s implementation, waiting until right before the termination hearing to raise the issue. We agree with the Department. Under T.S., Father waived his argument.
¶18 2. Did the District Court abuse its discretion by terminating Father’s parental rights?
¶19 Father argues the District Court abused its discretion because its legal conclusion that Father’s treatment plan was not successful was based on the finding that Father’s incarceration rendered the plan unsuccessful — a rationale we expressly forbade in In re A.T., 2003 MT 154, 316 Mont. 255, 70 P.3d 1247. While we acknowledge Father’s point regarding sole reliance on incarceration contemplated by a treatment plan, we affirm the District Court because of additional findings sufficient to support the District Court’s conclusion that the plan was unsuccessful.
¶20 Section 41-3-609(1)(f)(i), MCA, is written in the disjunctive: the Department can meet its burden by showing either the treatment plan has not been complied with, “or has not been successful.” We have recognized that the disjunctive language indicates a district court may find a treatment plan unsuccessful “even if the parent has completed all the required tasks.” In re D.F., 2007 MT 147, ¶ 36, 337 Mont. 461, *53 161 P.3d 825 (citing In re A.F., 2003 MT 254, ¶ 25, 317 Mont. 367, 77 P.3d 266); see also In re D.A., 2008 MT 247, ¶ 22, 344 Mont. 513, 189 P.3d 631 (“Well-intentioned efforts toward successful completion of a treatment plan do not demonstrate either the completion or the success of the plan.”) (citation omitted). However, a district court may not conclude the treatment plan has been unsuccessful simply because of a parent’s incarceration status when the parent’s incarceration status was known and considered by the Department when formulating the plan. A. T., ¶ 24.
¶21 The District Court’s conclusion that the treatment plan was unsuccessful was based in part on Finding of Fact 13, which stated Father “has been incarcerated since the inception of this case and was not released from his incarceration so that he could parent [J.B.].” The Department’s treatment plan expressly considered Father’s incarceration and nothing in the record indicates Father’s sentence was altered from that which the Department contemplated when it formulated the treatment plan. Had the District Court relied on nothing more, the District Court’s decision to terminate may well have conflicted with our decision in A.T. However, a review of additional findings establishes adequate grounds for termination.
¶22 To terminate parental rights under § 41-3-609(l)(f), MCA, a district court must make two basic findings. First, the district court must find the treatment plan “has not been complied with ... or has been unsuccessful.” Section 41-3-609(l)(f)(i), MCA. Second, the district court must find “the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.” Section 41-3-609(l)(f)(ii), MCA. The phrase, “the conduct or condition” (emphasis added), indicates that § 41-3-609(l)(f)(ii), MCA, is referring to a prior finding of a conduct or condition that has rendered the parent unfit. Given the statute does not expressly require the district court to make such a finding, the meaning of the statute is that the condition rendering the parent unfit is the condition(s) or reason(s) in § 41-3-609(l)(f)(i), MCA, that caused the treatment plan to be unsuccessful.
¶23 Finding of Fact 14 states “Father’s conduct or condition of inability to conform his conduct to the law resulting in incarceration, and inability to remain free of illicit drugs when out of incarceration, is unlikely to change within a reasonable time.” The District Court’s finding that Father had an “inability to conform his conduct to the law,” if supported by the evidence, establishes the condition that rendered Father unfit, i.e., the condition that rendered the treatment *54 plan unsuccessful.[2]
¶24 Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, even if weak and conflicting. Siebken v. Voderberg, 2015 MT 296, ¶ 12, 381 Mont. 256, 359 P.3d 1073. It consists of more than a mere scintilla of evidence but may be less than a preponderance. Marriage of Schmitz, 255 Mont. 159, 165, 841 P.2d 496, 500 (1992). Further, it is presumed that terminating a parent’s rights is in the child’s best interests when the child has been in foster care for 15 of the last 22 months. D.B., ¶ 40 (citing § 41-3-604(1), MCA). The presumption is not a sufficient basis, by itself, to terminate parental rights. D.B., ¶ 40.
¶25 Although it appears Father had completed several tasks of his plan, the uncontroverted evidence establishes that Father had acted out while incarcerated, including flooding his cell, breaking a sprinkler head, disruptive behavior, and refusing to follow orders. While the District Court did not enter findings regarding Father’s conduct while incarcerated, the evidence was uncontested, admitted by Father, and was necessarily implied by the District Court’s finding that Father was unable to conform his conduct to the law. See In re S.M., 2014 MT 309, ¶ 28, 377 Mont. 133, 339 P.3d 23 (“[UJnder the doctrine of implied findings, we may consult hearing transcripts in addition to the written findings. This doctrine holds that where ‘findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence.’ ”) (citation omitted). Father argues that his treatment plan required only that he refrain from committing further criminal offenses, and that the State has never charged him or proven the elements of a crime arising out of these incidents. However, while he was not criminally charged, Father’s admitted property destruction could well have supported a charge. The larger point is that Father was clearly not conforming his conduct to the legal requirements of his incarceration, and therefore not achieving the “long-term change and ... lasting stability” required *55 by the treatment plan for him to parent a child.
¶26 This evidence represents more than a “mere scintilla” in support of the District Court’s conclusion that Father had an inability to conform his conduct to the law, rendering the treatment plan unsuccessful. Given the presumption that termination was in J.B.’s best interests, D.B., ¶ 40, and that a treatment plan may be found unsuccessful “even if the parent has completed all the required tasks,” D.F., ¶ 36, we cannot conclude the District Court’s finding that the treatment plan was unsuccessful was clear error. The termination of Father’s parental rights was therefore not an abuse of discretion.
¶27 Affirmed.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and WHEAT concur.

 Mother’s parental rights to J.B., Jr., were also terminated by the District Court. She filed an appeal, which was initially consolidated with Father’s appeal herein but ultimately dismissed upon her counsel’s motion to withdraw and this Court’s *51 independent examination of the record pursuant to Anders v. California, 386 U.S. 738 (1967), on the ground that an appeal in her case would be wholly frivolous.

 It is insignificant here that the District Court articulated this finding to follow the language in § 41-3-609(l)(f)(ii), MCA, and not § 41-3-609(l)(f)(i), MCA. The District Court could have satisfied both subsections by finding “the treatment plan was unsuccessful because of Father’s inability to conform his conduct to the law” and then finding “that condition is unlikely to change within a reasonable time.” As long as the condition found to render the parent unfit, i.e., the condition rendering the treatment plan unsuccessful, is clearly articulated in a district court’s findings, as here, the particular formulation of the finding will generally not matter. Section 1-3-219, MCA (“The law respects form less than substance.”).