DA 19-0460

FILED

10/06/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0460

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 256N

IN RE THE PARENTING OF:

A.F.,

    Minor Child,

L.F.,

    Petitioner and Appellee,

    and

B.F.,

    Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DA 18-17
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Abigail Rogers, Abigail Rogers Law, PLLC, Missoula, Montana

    For Appellee:

        Matthew B. Lowy, Kathleen A. Molsberry, Lowy Law, PLLC, Missoula,
Montana

Submitted on Briefs:  August 12, 2020

Decided:  October 6, 2020

Filed:

                  _____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 B.F. (Father) appeals from the order of the Fourth Judicial District Court, Missoula County, terminating his parental rights to minor child, A.F., in conjunction with a petition for adoption of A.F. filed by the child's Step-father and supported by L.F.'s Mother. We affirm.

¶3 Father and Mother are A.F.'s biological parents. A.F. was conceived in the fall of 2011 and was born in July 2012. Father and Mother were together at the time the pregnancy was discovered, but the relationship ended a few months later, before A.F.'s birth. In its Findings of Fact, Conclusions of Law and Order (Order), the District Court found the relationship ended as a result of Father striking an older child of Mother's. At that time, Father packed up his things, left, and never returned.

¶4 In 2000, while still in high school and prior to meeting Mother, Father suffered a traumatic brain injury at the age of seventeen as the result of a high-speed car accident the day after he obtained his driver's license. Father has suffered serious injuries and disabling effects, including memory loss, trouble focusing and concentrating, and struggles with time management.

¶5	From conflicting testimony, the District Court found Father attended only one prenatal visit with Mother, an eight-week assessment at which the heartbeat was detected and a sonogram performed. Mother sent a text message to Father that A.F. had been born, but he did not reply. Father testified that Mother had contacted him about the birth. He stated he attempted to visit A.F. at the hospital, but either became confused or was denied entry for visitation. The District Court noted that there was not corroborating hospital records or other evidence of this account. Father made no further contact with Mother regarding the birth. The District Court found that Mother sent Father a text message when A.F. was hospitalized at the age of six months, but that she received no response from Father.

¶6	Father's mother was able to maintain cordial relations with Mother and form a relationship with A.F. Father's mother would visit and bring gifts for A.F. while attending birthday parties and holiday gatherings. Father's grandmother also occasionally joined in these visitations, but Father never accompanied them. Except for a single birthday gift Father provided for his mother to deliver to A.F., Father sent no correspondence to A.F. and no testimony was offered that he ever requested to accompany his mother on these visits. Father's mother testified she asked Mother on multiple occasions if Father could visit with A.F., but that Mother ignored or deflected these requests. Mother denied that such requests had been made. Father did not initiate contact with Mother on his own.

¶7	This case originated in January of 2018 when Father petitioned for implementation of a parenting plan. The petition acknowledged that Father had no relationship and no

contact with A.F. since birth. Mother initially ignored Father's petition, but after her default was entered, she retained counsel and the default was set aside. Mother initially sought to have Father's parental rights terminated on the ground that A.F. had been conceived as a result of sexual assault. After discovery and after a number of continuances of the trial, Mother was granted leave to amend her pleadings to instead assert abandonment by Father. Mother's husband, A.F.'s Step-father, also filed a Petition for Adoption of A.F., and the termination and adoption proceedings were joined in June of 2019. Step-father has contributed financially and emotionally to A.F.'s upbringing since 2015, and has been the only father figure to A.F., who is unaware of the identity of Father.

¶8 The District Court found Mother's testimony to be credible and that she did not thwart Father's attempts to form a relationship with A.F. The Court found "instead that [Father] failed to take even minimal steps to initiate a relationship with A.F. until he filed his Petition for a Parenting Plan on January 31, 2018," and that, while Father explored the possibility of supervised visitation during the litigation, "these belated steps do not overcome the lack of effort in the previous six years." The District Court found that Father's inaction constituted "voluntary abandonment," and concluded that Father had demonstrated "unfitness for abandoning A.F." within the meaning of § 41-3-102(1)(a)(i), MCA, for purposes of termination of parental rights for adoption availability under § 42-2-608, MCA.

¶9 Mother opened a case with the Child Support Enforcement Division in July 2012 primarily to ensure A.F. had medical insurance. After a DNA test confirmed Father's

paternity, child support was established in January 2013 in the amount of $136 per month, an amount that was reduced to $94 per month in January of 2017 to account for Father's difficulty working. Between the time that child support was established and May 2019, the last available information prior to the trial, Father accumulated $8,106 in child support arrearage. The District Court found Father had "only made payments in 13 of the 79 months that child support payments were due," and that the majority of payments made had been withheld from Father's social security benefits when he was receiving payments.

¶10 The District Court found that Father "picks up odd jobs" but that his ability to maintain regular employment is limited by his disability. The court found that "[a]t one point" Father applied for and was awarded Social Security Disability Insurance (SSDI) benefits, but that he was ruled ineligible when he was found working, and dropped from the program. Father has not reapplied since that time, citing difficulty with paperwork, although he testified that he "plans to." The court found Father had the SSDI resource available to him "if he had simply reapplied for SSDI as soon as he were eligible, but he has not," although he had the ability to do so. SSDI would allow Father to meet his support obligation, and A.F. would be eligible for auxiliary benefits. Because Father could meet his obligations had he completed the application, the District Court found Mother had proven beyond a reasonable doubt that Father failed to provide for A.F. for an aggregate

period of one year prior to the filing of the Petition for Adoption despite having the ability to do so, and that he was not willing to do so.[1]

¶11 Upon its determinations of abandonment and failure to support A.F., the District Court found by a preponderance of the evidence that it was in the best interest of the child to terminate Father's parental rights and that a failure to terminate Father's parental rights would be detrimental to A.F. Father appeals.

¶12 We review a district court's findings of fact in a parental rights termination proceeding to determine whether they are clearly erroneous. *In re B.F.*, 2020 MT 223, ¶ 29, 401 Mont. 185, __ P.3d, __ (citing *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, 130 P.3d 619). We review a district court's conclusions of law for correctness. *In re J.W.M.*, 2015 MT 231, ¶ 12, 380 Mont. 282, 354 P.3d 626. "A District Court's ultimate decision to terminate parental rights is reviewed for abuse of discretion." *In re P.T.D.*, 2018 MT 206, ¶ 16, 392 Mont. 376, 424 P.3d 619 (citation omitted). Such an abuse of discretion occurs when a district court "acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *In re J.W.M.*, ¶ 11 (citing *In re J.C.*, 2008 MT 127, ¶ 33, 343 Mont. 30, 183 P.3d 22). A biological parent's right to parent a child is a fundamental liberty interest. *In re A.L.P.*, 2020 MT 87, ¶ 13, 399 Mont. 504, 461 P.3d 136 (citing *In re*

---

[1] Father's mother offered this explanation in her testimony: "The Social Security department kept sending [Father] about an inch thick packet every year that he was supposed to complete. And he was only getting a partial payment. So if he did any work they would take that income out of the following month, check, so he never knew how much he was going to get, and he would get so frustrated with trying to fill out all the paperwork that he just finally said it's not worth it to try and get the miniscule amount that I end up getting with all the paperwork and everything that I have to deal with."

*R.L.*, 2014 MT 28, ¶ 17, 373 Mont. 421, 318 P.3d 691). We review a District Court's decision whether to allow a party to amend for abuse of discretion. *Rolan v. New W. Health Servs.*, 2017 MT 270, ¶ 10, 389 Mont. 228, 405 P.3d 65.

¶13 Father argues the District Court erred by holding that he willfully abandoned and failed to support A.F., by failing to give proper weight to his disability when examining the totality of the circumstances, and by abusing its discretion by allowing Mother to amend her petition.

¶14 Section 42-2-608(b), -608(c), MCA, provides, in relevant part:

> the court may terminate parental right for purposes of making a child available for adoption on the grounds of unfitness if . . . (b) the parent has willfully abandoned the child [or] (c) it is proven to the satisfaction of the court that the parent, if able, has not contributed to the support of the child for an aggregate period of 1 year before the filing of a petition for adoption.

Section 41-3-102(1), MCA, addresses abandonment:

> "Abandon", "abandoned", and "abandonment" mean: [] leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future[, or] willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child[.]

¶15 Father argues he "could not leave A.F. as he never met A.F.," and thus the District Court erred in holding he willfully abandoned A.F. when he had no relationship to abandon or resume, citing *In re T.C.*, 2001 MT 264, ¶ 28, 307 Mont. 244, 37 P.3d 70. In that case, the Court reasoned that a father could not have "willfully surrendered" the physical custody of his children, and thereafter abandon them by failing to express a firm intention to resume

7

custody or parenting, as the District Court had found, because the children were not previously in his custody pursuant to a stipulation with the children's mother. *In re T.C.*, ¶ 28. However, the Court "acknowledge[d] that it is possible for a court to find that a non-custodial parent abandoned his children," but determined that, "[i]n the case before us . . . the District Court's findings did not support such a conclusion." *In re T.C.*, ¶ 29 (citing *In re M.W.*, 234 Mont. 530, 534, 764 P.2d 1279, 1282 (1988)). Here, the findings support a conclusion of abandonment. For the better part of six years—a period that greatly exceeds the six-month period stated in the statute—Father was aware of A.F.'s existence and made no serious effort to be a part of the child's life. Father did nothing to put Mother or A.F. on notice that he intended to assume a parental role in the future. We conclude the District Court's abandonment determination was supported by substantial, credible evidence and that the District Court's conclusion was correct.

¶16     Father argues he could not have willfully abandoned A.F. because the absence of a relationship between him and A.F. was due to Mother's efforts to thwart his attempts to establish one, evidence of which the District Court "failed to give credence to." However, the District Court was presented with strong evidence to the contrary, which was in its prerogative to weigh and credit. For years, Father never sought to join his mother and grandmother when they were visiting A.F. He made no effort on his own to initiate contact with Mother or even to reply to Mother's text messages about A.F. He has never met A.F. *See In re Kesler*, 2018 MT 231, ¶ 17, 392 Mont. 540, 427 P.3d 77 ("It is the function of the district court, however, to weigh the testimony and determine witness credibility. It is the

8

district court that must resolve conflicts in testimony. We will not substitute our judgment for that of the district court on such issues.").

¶17 Father argues that the District Court erred in holding that he was able to provide support to A.F. Father made only a few support payments related to his receipt of social security benefits. A twenty-year employee with the Montana Child Support Enforcement Division testified that Father's SSDI payments and auxiliary benefits were used to pay for A.F.'s support and could be in the future. This substantial, credible evidence supports the District Court's finding that Father had access to a reliable resource that would allow him to meet his child support obligation but that he had failed to do so.

¶18 Father contends the District Court erred by failing to afford proper weight to his disability in the totality of the circumstances, and specifically regarding reapplication for SSDI because of his struggles with complex paperwork. However, the record shows Father was able to procure help in the past to apply for SSDI. Had he requested similar assistance and reapplied for SSDI, he would have been able to provide support to A.F. This is substantial, credible evidence in support of the District Court that Father was capable but failed to provide support to A.F. and we conclude the District Court's findings are not clearly erroneous.

¶19 Father's final argument on appeal is that the District Court abused its discretion by allowing Mother to amend her petition. Montana Rules of Civil Procedure 15(a)(2) allows parties to amend their pleading by leave of court, and "the court should freely give leave when justice so requires." The Court has determined that, while this "does not mean a

9

district court must grant a motion to amend, the Rule is 'to be interpreted liberally so that allowance of amendments [is] the general rule and denial is the exception.'" *Ally Fin., Inc. v. Stevenson*, 2018 MT 278, ¶ 13, 393 Mont. 332, 430 P.3d 522 (quoting *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544). Situations justifying denial include undue delay, bad faith on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Bitterroot Int'l Sys. v. W. Star Trucks, Inc.*, 2007 MT 48, ¶ 50, 336 Mont. 145, 153 P.3d 627 (citing *Lindey's v. Professional Consultants*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990)). "In determining whether an amendment would cause undue prejudice, a court should balance the prejudice suffered by the opposing party 'against the sufficiency of the moving party's justification of the delay.'" *Rolan*, ¶ 16 (quoting *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 14, 339 Mont. 445, 171 P.3d 690).

¶20 Father points to *Peuse v. Malkuch*, 275 Mont. 221, 911 P.2d 1153 (1996), as support that the District Court erred in allowing Mother to amend. However, we have explained that, in this regard, *Peuse* stands for the unremarkable proposition that "courts should not allow belated amendment of pleadings *as a means to defeat a potentially dispositive motion* absent a showing that the party could not have earlier sought amendment upon reasonable diligence." *Peeler v. Rocky Mt. Log Homes Can., Inc.*, 2018 MT 297, ¶ 29, 393 Mont. 396, 431 P.3d 911 (citing *Peuse*, 275 Mont at 227-28, 911 P.2d at 1156-57) (emphasis added). Here, the amendment was not sought as a means to defeat a potentially dispositive motion

by Father. In fact, it was filed after Mother had moved for summary judgment, and following multiple continuances of the trial related, at least in part, to Father's failure to timely answer discovery requests. With no undue prejudice, the District Court was to freely grant leave to amend if it found justification in Mother's reason for delay, and we conclude there was no abuse of discretion.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact are not clearly erroneous. The District Court's ruling was not an abuse of discretion.

¶22 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR