FILED

05/04/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0253

DA 20-0253

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 109N

IN THE MATTER OF:

C.B.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DN 2018-1
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Mother:

          Meri K. Althauser, Forward Legal, PLLC, Missoula, Montana

      For Appellant Father:

          Shannon Hathaway, Driscoll Hathaway Law Group, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

          Chris P. Christensen, Madison County Attorney, Virginia City, Montana

Submitted on Briefs:  March 17, 2021

Decided:  May 4, 2021

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 C.B. was born in September 2018. She immediately began experiencing significant withdrawal symptoms from opiates. The Department of Public Health and Human Services (Department) promptly removed C.B. and placed her in protective care. The Department filed a petition for emergency protective services, adjudication of a child as a youth in need of care, and requested temporary legal custody.

¶3 Prior to C.B.'s birth, Mother had a history of drug use. At the time of C.B.'s birth, Mother and Father were living and working in Montana, but Mother had multiple out-of-state warrants for drug and sexual offenses. Mother's parents lived in Sheridan, Montana, and Father's parents lived in Fort Collins, Colorado. Soon after C.B. was born, Mother was extradited to Colorado on outstanding drug charges. Father moved to Colorado to be near Mother, and they remained in Colorado for the duration of these proceedings. C.B. was in the same foster placement throughout the underlying proceedings.

¶4 On December 14, 2018, Mother and Father signed their respective treatment plans. Between December 2018 and August 2019, Mother and Father saw C.B. twice, and they

both were failing multiple aspects of their treatment plans. On August 12, 2019, the District Court held a termination hearing regarding both Mother's and Father's parental rights with respect to C.B. Both Mother and Father attended the hearing via telephone.

¶5 Child Protection Specialist Brenda Kirkley (Kirkley) testified for the Department about C.B.'s birth and removal from her parents' care as well as Mother and Father's treatment plans. Kirkley testified that Mother and Father were both noncompliant with their treatment plans.

¶6 Mother's treatment plan included tasks such as providing the Department with proof of Medicaid coverage, participating in a mental health evaluation, providing the Department releases, and attending counseling sessions. While Mother did participate in a mental health evaluation, she did not do so in a timely manner and she failed to comply with the other tasks. Mother's treatment plan also required that she participate in visitation with C.B., maintain sobriety, and obtain safe housing. Mother did not adequately accomplish these tasks.

¶7 Father's treatment plan included similar tasks, and Kirkley testified that Father was noncompliant. Father failed to provide the Department with the necessary releases for the Department to gain insight into his mental health and addiction services treatment progress. In December 2018, Father provided a urinalysis (UA) sample at the request of the Department. Kirkley observed that Father left the building after he was asked to provide a urine sample, and that the temperature strip on the specimen cup did not read the proper temperature when Father provided his sample. Like Mother, Father only visited C.B. twice between her removal at birth and the August 2019 hearing. Kirkley testified, "I have

literally made dozens and dozens of phone calls to [Father]. When he does return calls, it is often late at night or on a weekend[] and he will leave a message." Kirkley explained that Father repeatedly claimed that he called or left messages when there was no record of a call or message. Kirkley stated that Father never asked about C.B.'s medical needs.

¶8 Kirkley testified that Mother and Father participated in required treatment tasks sporadically, and often the Department was unable to reach them or get information from either of them. Despite offering to provide expenses so that Mother and Father could travel to Montana to see C.B., neither parent took advantage of that support. C.B. was 11 months old at the time of the hearing.

¶9 Both Mother and Father were present at the first termination hearing and testified. Father explained that he was struggling to manage financially and maintain housing. He also told the District Court about his work schedule and expressed that if C.B. were to be placed in Colorado closer to him he would likely be able to parent more effectively. Father testified he did not know what C.B.'s future medical needs might be.

¶10 Mother was indifferent to C.B.'s medical needs related to her drug exposure in utero. Mother was living at a halfway house and stated that she had recently graduated from a 90-day inpatient treatment. Mother testified that she was getting regular drug testing and her tests were all negative. Mother expressed that if given another chance at reunification she would work on her communication with the Department. Both Mother and Father made statements contradicting Kirkley's testimony.

¶11 The District Court agreed to provide Mother and Father with another chance to retain their parental rights. The court concluded that the parents had a constitutional right

4

to parent C.B., that due process had not been satisfied, and the statutory requirements had not been met for termination. Finally, the District Court held that the Department did not establish by clear and convincing evidence that the best interests of C.B. would be served by termination. After the hearing the court made the following conclusion based on the parents' history of failure to comply:

> **The Court must be abundantly clear, however: the parents are teetering on the edge of termination and no longer have any excuse for noncompliance when it comes to communication (including responding to Department telephone calls and email, and receiving and responding to correspondence sent to their listed address), clearance in advance and filing of waivers of confidentiality for providers, attendance at counseling, participating in UAs, and maintaining safe and stable housing. Nothing short of immediate and thorough compliance with the treatment plan will be accepted by this Court. While [Father] lacks the mitigating factors attributable to [Mother], the couple's decision to remain together at this time contributes to the Court giving him additional time. In the future, [Mother] may be required to make a choice between her daughter and her boyfriend if his participation does not drastically improve.**

(Emphasis in original.)

¶12 Between September 4, 2019, and February 4, 2020, the Department contacted Father at least 17 times by email. The Department contacted Mother at least 8 times by email. Mother and Father were also contacted by phone regularly during that period. They repeatedly failed to respond to the Department. Mother and Father were offered support for travel to see C.B. but did not respond or comply. The Department contacted Father on October 1 and November 4, 2019, to advise him that the Department had coordinated UA testing for him in Colorado. When Father responded to the Department, it often appeared as though he was being dishonest. Father failed to comply with the UA testing requirement

of his treatment plan. Father did not provide the Department with the necessary releases for his treatment plan providers. Mother failed to provide consistent, clean UAs. Larimer County denied the Interstate Compact on the Placement of Children parent home study request for Mother and Father because they failed to comply with many requirements of their treatment plans including UA testing, parenting classes, and consistent visitation with C.B.

¶13 On March 18, 2020, C.B.'s Court Appointed Special Advocate (CASA) filed a report with the District Court. The report stated that both parents were noncompliant with their treatment plans, although Mother complied with certain treatment tasks while she was in a treatment facility. The CASA was concerned that Father was continually dishonest with the Department. She also had concerns about both Mother and Father failing to communicate adequately with the Department for visits with C.B. as well as making excuses for missing visits, being late, and failing to show up for UA testing.

¶14 The CASA notified the court that on February 28, 2020, Mother was arrested for charges ranging from retail theft to rape and exploiting a prostitute. Father failed to notify the Department of the arrest, and instead continued to suggest to the Department that Mother was in the community. The CASA reported that, "Since the inception of this case [the Department] has made dozens of phone calls to birth parents with very little communication in return. The parents continue to miss scheduled phone calls/meetings and call at unscheduled times. They have not been forthcoming in relaying information that [the Department] needs to assess their progress and circumstance." The CASA

6

recommended that both Mother's and Father's rights be terminated and that C.B. transition to care with Mother's cousin and her husband as planned.

¶15     On March 30, 2020, the District Court held a second termination hearing. Both Mother and Father were notified of the date and hearing time. Father attended by telephone, but Mother did not attend due to her incarceration in Colorado. C.B. was just under 18 months old. The Department noted at the hearing that neither of C.B.'s grandparents were able to have C.B. placed with them.

¶16     The Department presented evidence that was primarily from the period between the first termination hearing in August 2019 and March 2020. The Department provided significant evidence showing that they consistently contacted both Mother and Father. The Department provided support by assisting the parents in securing a UA testing option in Colorado. The Department attempted to assist both parents with visitation, including offering to pay for plane tickets for them to visit C.B. During this time period, neither parent was able to maintain stable housing.

¶17     Both parents were noncompliant with their treatment plans. Father failed to comply with reasonable requests from the Department generally, such as providing releases for necessary information from care providers. Father was dishonest with the Department about multiple issues including things such as why he was late to scheduled visitation with C.B., whether he had submitted required documents, and about calls and voicemails he claimed he made to the Department. The Department kept records of phone calls within their system and multiple times Father stated that he called or left messages when the Department had no record of the calls.

¶18 The District Court terminated both Mother's and Father's parental rights to C.B. on April 10, 2020.

¶19 Mother argues on appeal that the District Court erred when it incorrectly concluded that she would not change within a reasonable time. Mother also makes a claim of ineffective assistance of counsel (IAC) because her attorney did not ensure Mother's presence at the termination hearing and failed to gather evidence to support Mother's position.

¶20 Mother argues that because she was successfully able to make arguments at the first termination hearing that resulted in a denial, she would have been able to do so again at the present termination. Mother argues that her attorney failed to secure her presence at the second termination hearing and thus she was prejudiced.

¶21 Father argues that the Department failed to provide reasonable efforts to reunify his family by failing to assist him in completing his treatment plan. Father argues further that the Department did not prove by clear and convincing evidence that he was unlikely to change within a reasonable time.

¶22 "A district court's ultimate decision to terminate parental rights is reviewed for an abuse of discretion." *In re P.T.D.*, 2018 MT 206, ¶ 16, 392 Mont. 376, 424 P.3d 619 (citation omitted). We review a district court's findings of fact to determine whether the district court's findings are clearly erroneous. *In re Declaring A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, 130 P.3d 619 (citation omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record convinces this Court a mistake was made. *In re J.B.*,

8

2016 MT 68, ¶ 10, 383 Mont. 48, 368 P.3d 715 (citation omitted). "We review a district court's conclusions of law for correctness." *P.T.D.*, ¶ 17 (citation omitted).

¶23 Mother's claim against her attorney is inadequate. We use a two-prong test in evaluating IAC claims. *Heath v. State*, 2009 MT 7, ¶ 17, 348 Mont. 361, 202 P.3d 118; *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under the *Strickland* test, a party must establish that their attorney was deficient, and that the attorney's deficient performance was prejudicial and deprived the party of a fair trial. *Heath*, ¶ 17 (citations omitted). Mother was notified of the second termination hearing in advance of the hearing and failed to attend. However, Mother has not provided any support for her argument that her attorney's performance was deficient or that she was deprived of a fair termination hearing.

¶24 The facts here are undisputed. Mother was using opiates during her pregnancy, leading to C.B.'s addiction to opiates at birth and subsequent withdrawal. Mother did eventually sign up for drug testing but tested positive on at least one occasion and missed multiple tests. Mother was in and out of jail during these proceedings. In January 2019, Mother was arrested on multiple felony charges including aggravated sexual assault. In addition to failing to provide a stable home, Mother consistently failed to respond to the Department as needed and did not comply with the visitation schedule nor maintain sobriety. The District Court correctly held that Mother was unsuccessful in her treatment plan.

¶25 The Department made significant efforts to assist Father. Father continued to refuse to sign up for drug testing until very late in the proceedings. The data from the testing was

not shared with the Department as required by Father's treatment plan. Father failed to complete parenting classes, and also failed to consistently participate in visits with C.B. even when those visits were available by telephone. After the first petition filed by the Department, Father made little or no effort to comply with the Department's requirements to reach reunification. The District Court correctly determined that Father was unsuccessful in his treatment plan.

¶26 The District Court did not abuse its discretion in terminating Mother's and Father's parental rights. Termination was in the best interest of C.B.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶28 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE