FILED

10/10/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0022

DA 23-0022

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 192N

IN THE MATTER OF:

M.Z.L.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDN-2020-081
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Shannon Hathaway, Hathaway Law Group, Missoula, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

    Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

    Jim Reintsma, Assistant Attorney General, Child Protection Unit, Helena, Montana

Submitted on Briefs:  August 30, 2023

Decided:  October 10, 2023

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Mother appeals from a First Judicial District Court order granting the Department of Public Health and Human Services' (Department) petition for termination of parental rights (termination) of her child, M.Z.L.  We affirm.

¶3     M.Z.L. was removed from Mother's care on June 17, 2020, after her two-month-old sibling was taken to the emergency room with a non-accidental broken arm.  Following a hearing where Mother did not appear, the District Court adjudicated M.Z.L. as a youth in need of care (YINC) and granted temporary legal custody (TLC) to the Department on August 11, 2020.  Mother agreed to a treatment plan on August 14, 2020.  The court extended TLC three separate times to give Mother more time to complete her treatment plan—totaling more than half of M.Z.L.'s life.  The Department eventually sought termination after Mother's continued failure to meet the requirements of her treatment plan. The District Court held a hearing on November 17, 2022; Mother contested the termination but offered to stipulate to a guardianship with M.Z.L.'s foster parents.  The court entered the termination order on December 13, 2022.  Mother appeals.

¶4     We review a district court's decision to terminate parental rights for abuse of discretion, which considers "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re K.J.B.*, 2007 MT 216, ¶ 22, 339 Mont. 28, 168 P.3d 629. We will not disturb a district court's decision unless there is a mistake of law or a clearly erroneous finding of fact—we are not in the position to evaluate the evidence for a different outcome but rather to determine whether the district court abused its discretion. *In re A.B.*, 2020 MT 64, ¶¶ 23, 40, 399 Mont. 219, 460 P.3d 405. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court is left with the definite and firm conviction that a mistake has been committed." *In re S.S.*, 2022 MT 75, ¶ 12, 408 Mont. 238, 507 P.3d 1161.

¶5     On appeal, Mother offers two arguments: (1) the record supported that guardianship was in M.Z.L.'s best interests, and (2) the record did not support that termination was in M.Z.L.'s best interests.

¶6     First, Mother contends that the District Court erred by granting termination because a guardianship was in M.Z.L.'s best interests. Even if the record supports that a guardianship could be appropriate, we do not re-weigh the evidence but instead determine whether the district court abused its discretion in terminating Mother's parental rights. *In re A.B.*, ¶ 40. Further, there is no requirement that a district court consider other options if the statutory requirements for termination are met. *In re A.B.*, ¶ 38. Therefore, as long as the statutory requirements for termination were met, the District Court did not abuse its discretion in refusing to consider a guardianship as opposed to termination.

3

¶7 A court may order termination if clear and convincing evidence establishes that the child was (1) adjudicated a YINC, (2) an approved treatment plan was not complied with, and (3) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Of paramount concern are the child's best interests, which take precedence over parental rights. *In re K.L.*, 2014 MT 28, ¶ 15, 373 Mont. 421, 318 P.3d 691. A presumption arises that termination is in the child's best interests when a child has been in foster care for at least 15 of the most recent 22 months. Section 41-3-604(1), MCA; *see In re A.B.*, ¶¶ 32-33, 40. Further, on appeal we review the evidence in the light most favorable to the prevailing party to determine whether substantial credible evidence supports the district court's findings. *In re J.B.*, 2016 MT 68, ¶ 10, 383 Mont. 48, 368 P.3d 715.

¶8 Here, Mother does not contest that M.Z.L. was adjudicated a YINC, that she completed her treatment plan in the 28 months afforded her, or that she is likely to change within a reasonable time. And Mother does not contest the presumption in favor of termination based on the extended foster placement. Mother instead argues that termination was not in M.Z.L.'s best interests because M.Z.L. and Mother had a strong bond that guardianship would maintain.

¶9 The District Court found that termination was in M.Z.L.'s best interests, noting it had given primary consideration to the physical, mental, and emotional needs of M.Z.L. The court found Mother was unfit to parent due to mental-health issues. These issues— and Mother's treatment plan—required her to maintain sobriety from alcohol and drugs to address the changes necessary to become fit, which she has been unwilling or unable to

4

pursue. The court further found that Mother has been unable to demonstrate her ability to parent for any sustained period.

¶10 These findings are supported by substantial evidence and are not clearly erroneous. An addiction counselor testified that when Mother decreased her drug use, her mental-health progress increased drastically. He also recommended she remain sober to allow for a better baseline and treatment. The child protection specialist, Justina Clinch (Clinch), testified that Mother failed most drug tests—on the rare occasion she complied with mandated testing. Clinch also testified that in the 28 months since the treatment plan was approved, Mother had not been consistently addressing her childhood trauma or her drug dependency, which further impaired her ability to meet M.Z.L.'s needs.

¶11 The court also heard testimony that these conditions were unlikely to change within a reasonable amount of time. Mother had consistently been unwilling to maintain mental-health treatment and had admitted numerous times to her dependency on drugs and unwillingness to change that part of her life. During the trial home visit, the record shows that Mother was unable to demonstrate her willingness to parent long term. The testimony showed that for a majority of M.Z.L.'s trial home visit, Mother dropped M.Z.L. off at other people's houses to care for her (without Department approval).

¶12 Mother's aunt testified—and Mother argues before us—that Mother does not want to parent M.Z.L. full-time, but instead would prefer to remain in her life in a visitation role. Mother's witness recognized that although Mother did a great job with M.Z.L. in hour-long visits once a week, she has repeatedly done a bad job with M.Z.L. when given greater opportunities. Children need not be forced to wait for their parents to be able to parent.

5

*In re A.B.*, ¶ 38.  The District Court's findings are supported by substantial evidence and are not clearly erroneous.

¶13     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14     Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE